Vernon W. HUFFMAN, Appellant,

v.

UNITED STATES, Appellee.

Dennis Eugene PRYBA, Appellant,

v.

UNITED STATES, Appellee.

Nos. 4924, 4925.

District of Columbia Court of Appeals.

Argued June 23, 1969.

Decided Dec. 2, 1969.

Stanley M. Dietz, Washington, D. C., for appellants.

Robert G. Mahony, Atty., Dept. of Justice, with whom Thomas Flannery, U. S. Atty., Roger Zuckerman, Asst. U. S. Atty., and Charles F. Scarlata, Atty., Dept. of Justice, were on the brief, for appellee.

Before HOOD, Chief Judge, and KERN and GALLAGHER, Associate Judges.

HOOD, Chief Judge:

Appellant Huffman was convicted on a charge of knowingly selling certain obscene, indecent and filthy articles; and he was convicted on two charges, and appellant Pryba on one charge, of knowingly possessing certain obscene, indecent and filthy articles with intent to disseminate.[1] The articles, magazines published in Denmark and entitled "Girls" and "Modern Girls", were kept and sold in an establishment known as the Village Book Store. Pryba was president of the corporation operating the store, and Huffman was an employee of ·the store.

At the outset we reject as without merit the claims of the appellants relating to the validity of the issuance and execution of the search warrant, and the claim of lack of a fair trial. We turn to those claims of error which we feel require discussion, though not necessarily in the order presented in the brief.

Each of the so-called magazines in question consisted of a collection of photographs of two females engaged in undressing, caressing, fondling and embracing the other. In many of the photographs the subjects were nude or wearing only certain articles of clothing, such as stockings, which served to accentuate the nakedness of the

---

1. D.C.Code 1967, § 22–2001 (1969 Supp.).
   (a) (1) It shall be unlawful in the District of Columbia for a person knowingly—
   (A) to sell, deliver, distribute, or provide, or offer or agree to sell, deliver, distribute, or provide any obscene, indecent, or filthy writing, picture, sound recording, or other article or representation;

\* \* \* \* \* \*

   (E) to create, buy, procure, or possess any matter described in the preceding subparagraphs of this paragraph with intent to disseminate such matter in violation of this subsection;

body. The postures of the subjects in many of the pictures were such as to expose and bring into focus the entire pubic area. The foregoing is not intended to be a graphic and complete description of the photographs. Rarely will a verbal description of a photograph accurately depict it. In our opinion, anyone viewing the photographs would conclude that they were intended to and did portray homosexual activities between two females.

One of appellants' main arguments is that the trial court was in error in not admitting in evidence twenty-six tendered exhibits. These exhibits consisted of eleven different copies of "Cover Girl", eleven different copies of "Exciting", one copy of "Hellenic Sun", one copy of "International Nudist Sun", one copy of "Review International", and one copy of "Exclusive". "Cover Girl", "Exciting" and "Exclusive" contained photographs of single nude females. The others contained photographs of nude males. Appellant argues that certain of the tendered exhibits had been declared nonobscene by the Supreme Court and the others were comparable to those "cleared by the Supreme Court".[2]

■ The exact purpose for which these exhibits were offered is not clear, but one purpose apparently was to have them shown to the jury and have the jury told that certain of them had been declared nonobscene by the Supreme Court. We hold they were not admissible for this purpose. In the first place, neither the trial judge nor anyone else could possibly tell the jury why the Supreme Court ruled that the exhibits were nonobscene;[3]

and it would certainly serve no valid purpose to permit the jury to speculate as to what would be the holding of the Supreme Court with respect to the exhibits here in issue. In the second place, there is a vast difference between photographs portraying sexual activity between two nudes and photographs of single nudes. The tendered exhibits would have had no probative weight on the issue before the jury.[4] For the same reason the tendered exhibits were not admissible as proof of contemporary community standards even if it is true as asserted by counsel at trial, that the tendered exhibits "are sold all over the United States." The fallacy in counsel's argument is his premise that the tendered exhibits are comparable to the material possessed and sold by appellants.

■ Appellants also argue that recent decisions of the Supreme Court, particularly Redrup v. State of New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1966), have the effect of holding that in order to sustain a conviction in obscenity cases the prosecution must not only prove that the material meets the *Roth*[5] definition of obscenity but must also prove one of three additional elements. Those elements are stated in appellants' brief to be: (1) protection of juveniles; (2) assault upon individual privacy by publication in a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to it; and (3) pandering of the materials as described in Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). Appellants argue that, as there was no evidence here of the first two elements, it was necessary to prove pandering. We do not agree. *Ginz-*

2. The Supreme Court cases referred to are, apparently, the per curiam opinions in Potomac News Co. v. United States, 389 U.S. 47, 88 S.Ct. 233, 19 L.Ed.2d 46 (1967), and Central Magazine Sales Ltd. v. United States, 389 U.S. 50, 88 S.Ct. 235, 19 L.Ed.2d 49 (1967).

3. *See* Redrup v. State of New York, 386 U.S. 767, 87 S.Ct. 1414 (1966) which points up the varying views of the mem-

bers of the Court on the question of obscenity.

4. Womack v. United States, 111 U.S.App. D.C. 8, 294 F.2d 204 (1961), cert. denied, 365 U.S. 859, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961).

5. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

*burg* held that evidence of pandering "was relevant in determining the ultimate question of obscenity" (383 U.S. at 470, 86 S.Ct. at 947) and that "in close cases evidence of pandering may be probative with respect to the nature of the material in question" (383 U.S. at 474, 86 S.Ct. at 949), but it did not hold that such evidence was essential. Justice Brennan, the author of *Ginzburg*, explained in "Fanny Hill" (A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Mass., 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed. 2d 1 (1966)) that the holding in *Ginzburg* was that "where the purveyor's sole emphasis is on the sexually provocative aspects of his publications, a court could accept his evaluation at its face value" (383 U.S. at 420, 86 S.Ct. at 978).

■ Appellants also contend that the magazines are constitutionally protected by the First Amendment, and that their motion for a directed verdict at the close of the Government's case should have been granted. This argument appears to be based upon the assertion that the magazines could not be classified as "hard-core pornography". The Supreme Court has never defined hard-core pornography or obscenity, but we have today [6] adopted the definition stated by the Court of Special Appeals of Maryland in Donnenberg v. State, 1 Md. App. 591, 232 A.2d 264 (1967). Neither this court nor the trial court could rule as a matter of law that the material introduced did not come within that definition. But that question is not before us now. The case was tried and submitted to the jury under the *Roth* test and there was expert testimony, pro and con, that the material came within the *Roth* test, applying national contemporary community standards. The jury was fully instructed on the subject and no error is assigned with respect to the instructions. We hold the case was properly one for the jury.

■ Appellants also argue that the Government failed to prove "scienter". The argument appears to be that the Government must prove not only that the material met the *Roth* test but also that appellants knew it met that test; *i. e.*, that the appellants intentionally violated the statute. Our statute required proof that appellants had knowledge of the character and contents of the material; and. that constituted sufficient proof of scienter.[7] If appellants knew what they were doing, their personal belief that they were not violating the law was no defense. There was ample evidence from which the jury could properly infer that both appellants were aware of the character and contents of the material. Thus, the trial court properly excluded testimony that Huffman had received "advice of competent counsel" that the material could be legally sold.

It is our opinion that the case was properly one for the jury, that the jury was properly instructed, and the jury's verdict must stand.

Finally, appellants complain that the sentences as imposed are unconstitutional in that the jail sentences were suspended on conditions, which appellants assert, deprived them of their constitutional rights.

According to the record the sentence imposed on Huffman in 19977–68–A was:

$300.00 or 60 days and 60 days with 207-02–68–A. Jail term suspended. One year probation.

In 19977–68–B, Huffman's sentence was:

$300.00 or 60 days and 60 days in jail. Jail term suspended. One year probation. One condition of probation is that defendant allow police to search any premises he operates or manages without a search warrant. With 20702–68–A.

6. *See* Morris v. United States, D.C.App., 259 A.2d 337, decided this day.

7. *See* Morris v. United States, D.C.App., 259 A.2d 337, decided this day, citing Mishkin v. United States, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966).

In 20702–68–A, Huffman's sentence was:

$300.00 or 60 days and 60 days in jail. Jail term suspended.

Defendant placed on one year probation.

One condition of probation is that defendant to allow police to investigate any premises he operates without a search warrant.

Pryba's sentence was:

$500.00 (or 90 days in jail in default) and 6 months in jail.

6 months jail sentence suspended on condition defendant authorizes police to search any and all business premises he operates without a search warrant.

It will be noted that in the first case Huffman was placed on probation with no special condition.[8] In the other two cases Huffman was placed on probation on special conditions. The conditions were identical, excepting that one used the word "search" and the other "investigate", and one used any premises he "operates or manages" and the other any premises he "operates". We do not know whether the trial court intended the words to be construed as having identical or dissimilar meanings.

Pryba, it will be noted, was not placed on probation, but his jail sentence was suspended on special condition, similar to but not identical with the condition imposed on Huffman. Huffman's condition specified "any premises", but Pryba's condition was limited to "business premises". It may also be noted that the condition imposed on Pryba contained no time limitation.

■ Our statute[9] gives the trial court broad discretion in suspending imposition of sentence or execution of sentence "for such time and upon such terms as it deems best." In either case the defendant may be placed on probation. We reject appellants' contention that a condition can never be imposed which would restrict their constitutional rights, because the alternative is imprisonment in jail which certainly restricts their rights. The choice is theirs to either serve a jail sentence or accept the condition.

■ However, the condition imposed must not be immoral, illegal or impossible of performance;[10] and we think the conditions imposed here were impossible of performance and were illegal. In effect appellants were required to give consent in advance to the search by police of any premises operated or managed (not owned) by them in the future. An employee of a business concern, whether manager or otherwise, lacks the power to give a general authorization to the police to search his employer's premises, and it would be illegal for him to attempt to give such authority. In order to avoid a jail sentence a defendant may be required to waive some of his own rights, but he cannot be required, because he has no power to do so, to waive the rights of others.

The convictions are affirmed and the cases are remanded for the imposition of proper sentences.[11]

Affirmed.

---

8. We understand that in all cases of probation, four general conditions are imposed on the probationer, namely:

That he will not repeat the offense.

That he will be of good behavior and keep the peace towards all persons.

That he will report to the Probation Officer when directed at such times and places as required.

That he will not leave the District of Columbia without permission of the Probation Officer.

9. D.C.Code 1967, § 16–710.

10. Basile v. United States, D.C.Mun.App., 38 A.2d 620 (1944).

11. See Bird v. State, 231 Md. 432, 190 A.2d 804 (1963).