**UNITED STATES of America**

v.

**Herman L. WOMACK, Appellant.**

**UNITED STATES of America**

v.

**POTOMAC NEWS COMPANY,**
**Appellant.**

**Nos. 71–1711, 71–1894.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 21, 1972.

Decided Dec. 7, 1972.*

Supplemental Opinion Dec. 31, 1974.

Rehearing Denied Jan. 31, 1975.

---

* Only the evidentiary issues presented by these cases are disposed of by this opinion.

Mr. Stanley M. Dietz, Washington, D. C., for appellants.

Mr. Robert D. Zsalman, Asst. U. S. Atty., with whom Messrs. Harold H. Titus, Jr., U. S. Atty., John A. Terry and Donald E. Campbell, Asst. U. S. Attys., were on the brief, for appellee. Mr. Richard A. Hibey, Asst. U. S. Atty., at the time the record was filed, also entered an appearance for appellee. Mr. Thomas A. Flannery, U. S. Atty., at the time the record was filed, also entered an appearance for appellee in No. 71–1894.

Before TAMM, Circuit Judge, WADE H. McCREE, Jr.,** Circuit Judge for the Sixth Circuit, and MacKINNON, Circuit Judge.

MacKINNON, Circuit Judge:

Appellants Womack and Potomac News, Co., Inc. were indicted on twenty counts of interstate transportation of

** Sitting by designation pursuant to Title 28, U.S.C. § 291(a).

obscene matter in violation of 18 U.S.C. § 1462 [1] and three counts of mailing nonmailable matter and information stating how and where obscene materials were to be obtained, in violation of 18 U.S.C. § 1461. [2] A jury trial resulted in a verdict of guilty on twelve counts under § 1462 and on all three counts under § 1461. [3] On this appeal three issues are raised: (1) the propriety of the exclusion by the trial court of a number of allegedly comparable magazines; (2) whether the eight magazines which formed the basis of appellants' convictions were obscene and not within the free speech guarantees of the First Amendment and (3) the validity of the search warrant under which the eight magazines were seized. In this opinion we consider only issues (1) and (3) and defer any opinion on (2) pending the decisions of the Supreme Court in Alexander v. Virginia, 212 Va. 554, 186 S.E.2d 43, cert. granted, 408 U.S. 921, 92 S.Ct. 2490, 33 L.Ed.2d 332 (1972) and companion cases, involving similar issues which were argued on October 16, 1972.

## I.  *Comparison Evidence*

Appellants were convicted on the basis of eight explicit "magazines" [4] apparent-

---

1. 18 U.S.C. § 1462 provides:

§ 1462. Importation or transportation of obscene matters

Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—

(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character;

\*        \*        \*        \*        \*

Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.

2. 18 U.S.C. § 1461 provides:

§ 1461. Mailing obscene or crime-inciting matter

Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance; and—

\*        \*        \*        \*        \*

Every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, or how, or from whom, or by what means any of such mentioned matters, articles, or things may be obtained or made

. . .

Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.

Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section or section 3001(e) of title 39 to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.

3. Appellant Womack was sentenced to serve one to three years' imprisonment on 12 counts (concurrent with each other) and to serve eighteen months to four and one-half years' imprisonment on three counts (concurrent with each other but consecutive to the sentence imposed upon the prior counts). The United States District Court for the District of Columbia sentenced the appellant, Potomac News Company, to pay a fine of $2,000 upon each count cumulatively (a total fine of $30,000).

4. The eight magazines are: *Boys No. 1, Boys No. 2, Boys No. 3,* (Government Exhibits Nos. 25, 26, 27) (5,000 copies of each were printed and single issues retailed for $3.00 each; Tr. 1095); *Chicken Little No. 2* (Ex. 28, 10,000 printed; $3.00 each); *Phallic Development in the Pre-Adolescent,* (Ex. 24, 20,000 printed, $5.00 each); *Phallic Development in the Adolescent* (Ex. 21–I, 20,000 printed, $5.00 each); *Boys Who Seduce Other Boys,* (Ex. 30, 20,000 printed, $3.50 each); and *My Last Time —Never Again* (Ex. 31, 20,000 printed, $3.50 each). Appellants were acquitted on counts 5 and 8, which involved the magazines *Auto-Fellatio and Masturba-*

ly directed at an audience of homosexuals and pedophiles.[5] The particular evidentiary issue on appeal involves appellants' attempts to introduce allegedly comparable materials [6] into evidence for various purposes. Appellants contend

*tion*, (60,000–80,000 sold, $7.50 each) and *Checkmate* (Ex. 29, 5,000 printed, $3.00 each). Testimony as to printing volume, sales and the various prices charged at the *different levels of distribution appear at* Tr. 1095–1100. Additionally, under counts 22 and 23, the jury was allowed to consider only those advertising brochures which dealt with the original ten magazines set out in the indictment, i. e., Government Exhibits 21, 21–B, 22–A and 23–C. All other brochures involving other magazines were excluded by the trial court (Tr. 1287–1288).

The eight magazines in question consist of a collection of photographs showing young boys of the adolescent and pre-adolescent age group in a state of complete or partial nudity. The photographs have been cropped and the youngsters posed in a manner which highlights and emphasizes their exposed genitalia. In several instances, most noticeably on the back covers of both *Phallic Development* magazines, the cropping has been accomplished in such a way as to show the viewer nothing more than the genitals themselves and a small portion of the surrounding pubic region. Many photographs particularly those of the older boys, depict the penis in full or partial erection. A suggestion of masochism is present in several photographs by depicting totally nude youngsters bound by ropes while another is ensnared in a net. Among those photographs known in the trade as "singles," i. e., those portraying only one model, several boys are shown fondling their penises while another manually lathers his semi-erect penis with soap. Among those photographs known in the trade as "duals," i. e., those portraying two models, the youngsters are seen caressing, fondling, kissing, and embracing each other. In many instances the positions of the boys indicate that oral or anal sodomy is imminent. In one photograph (*Boys Who Seduce Other Boys* p. 33) it appears that anal sodomy is ongoing.

Only four of the magazines contain any *substantial text*. They generally consist of "case histories" in which certain portions are emphasized with bold face type. These passages deal with such diverse sexual activities as fellatio, anal sodomy and masturbation. The photographs accompanying the text depict nude males embracing and fondling each other and are wholly unrelated to the text.

5. There was expert testimony to the effect that these materials would appeal to

pedophiles. A pedophile is an adult who has an erotic desire for a child. (Tr. 473–76, 478–80, 480–82, 525–26, 865–67, 903–07, 913, 915–16, 919–21, 933–35). Appellants concede that the magazines were directed at a homosexual audience. (Appellants' Br. 28–29).

6. The appellants offered a variety of materials for comparison to those at issue in this case consisting of thirty-five magazines and ten posters, some of which had been held nonobscene by various courts. Defense Exhibits 23 and 24 are copies of a heterosexual magazine called *Exciting* held nonobscene in Bloss v. Dykema, 398 U.S. 278, 90 S.Ct. 1727, 26 L.Ed.2d 230 (1970). Nos. 25, 25a and 25b are "physique" magazines, *Grecian Guild Pictorial, Trim, Manual,* held nonobscene in Manual Enterprises v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962). No. 26 is also a male physique magazine entitled *Hellenic Sun* held nonobscene in Potomac News Co. v. United States, 389 U.S. 47, 88 S.Ct. 233, 19 L.Ed.2d 46 (1967). Similarly, the materials that were the subject of the reversals of convictions in Felton v. Pensacola, 390 U.S. 340, 88 S.Ct. 1098, 19 L.Ed.2d 1220 (1968), magazines entitled, *A Hundred Naked Rebels, Solis Review International* No. 1, *Review International* No. 2 were offered as defendants' exhibits Nos. 27, 27a, 27b, 27c. The ten posters (Defense Exhibits Nos. 28–28I) consisted of large individual photographs of partially nude adult males held nonobscene by the Eighth Circuit in Spinar v. United States, 440 F.2d 1241 (8th Cir. 1971). Appellants also cite to us an unreported District Court decision which held nonobscene a number of copies of magazines of the *Butch* and *Tiger* series, depicting nude males in-doors, mostly in "singles" —where there are "duals," the models are widely separated with no indication of sexual activity. United States v. Spinar, U.S.D.C.Minn. 4–67–Crim. 15 decided July 26, 1967. These magazines (*Butch* and *Tiger*) together with another copy of *A Hundred Naked Rebels* and *Male Nudist Portfolio* which were also exonerated in this District Court decision were offered as Defense Exhibits Nos. 33–39. Defense Exhibits 32–32g are magazines appellants claim were purchased from their competitors and are quite similar to those at issue here. They depict nude males, both young and adult engaging in acts of fellatio, anal sodomy and masturbation. As to these publications, appellants admit that no court has

they were denied due process of law in the District Court's refusal to admit any of the proffered exhibits. There has been a considerable amount of confusion in the courts as to the admissibility and function of comparison evidence in obscenity cases. Some jurisdictions have held it reversible error to reject such evidence, while others exclude it rather summarily.[7] Some of this confusion, it seems, stems from an inability to distinguish the various purposes for which comparison evidence is sought to be introduced. In this case appellants urge three distinct purposes which we will consider separately.

## A. *Nonobscenity as a Matter of Law*

▮▮▮▮ Appellants contend that they should be allowed as a requirement of due process to present the proffered comparison exhibits to the jury as primary autoptical evidence in order that the jury may compare materials previously held nonobscene by other courts (including the United States Supreme Court) to the exhibits which are the subject of the instant prosecution. This is clearly incorrect and involves a basic misconception of the respective roles of judge and jury. In essence it demands that the jury perform the judge's task of determining whether this issue should be disposed of as a matter of law. That is, it requires the jury to interpret the effect of a previous holding of nonobscenity as it bears on the issues of the present case. Can it possibly be said that the jury is competent to interpret the *stare decisis* effect of various decisions, analyze the grounds of their holdings and distinguish them on their facts?[8] This is clearly beyond the province of the jury and is a basic function of the judge. When presented with a motion for a judgment of acquittal under Fed.R.Crim.P. 29, the judge properly should compare the evidence in the instant case with that held nonobscene by the controlling authority of that jurisdiction. If the matter held nonobscene by such courts, in his opinion, equals or exceeds[9] the evidence at issue, a judgment of acquittal should certainly be entered.

ever considered them in an obscenity prosecution.

7. *Compare* Woodruff v. State, 11 Md.App. 202, 273 A.2d 436 (1971); Yudkin v. State, 229 Md. 223, 182 A.2d 798 (1962); In Re Harris, 56 Cal.2d 879, 16 Cal. Rptr. 889, 366 P.2d 305 (1961) *with* State v. Von Cleef, 102 N.J.Super. 102, 245 A.2d 495 (1968); State v. Jungclaus, 176 Neb. 641, 126 N.W.2d 858 (1964); People v. Finkelstein, 11 N.Y.2d 300, 229 N.Y.S.2d 367, 183 N.E.2d 661 (1962). In the Federal courts, *compare* Kahm v. United States, 300 F.2d 78, 84 (5th Cir. 1962) (admits evidence without discussion) *with* Miller v. United States, 431 F.2d 655, 659 (9th Cir. 1970) (excludes without discussion). *See also,* Annotation, "Modern Concept of Obscenity," 5 A.L.R.3d 1158, 1195 § 16[b] (1966); 50 Am.Jur.2d Lewdness, Indecency, and Obscenity § 37.

8. As one court points out, especially in light of the *Redrup* (Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967)) line of cases cryptically reversing a large number of obscenity convictions, "neither the trial judge nor anyone else could possibly tell the jury why the Supreme Court ruled that the exhibits were nonobscene; and it would serve no valid purpose to permit the jury to speculate as to what would be the holding of the Supreme Court with respect to the exhibits here in issue." Huffman v. United States, 259 A.2d 342, 344 (D.C.App.1969), aff'd, 152 U.S.App.D.C. 238, 470 F.2d 386 (1971). The specter of counsel for both parties arguing to the jury the niceties of legal analysis and interpretation of cases is implicit in appellants' proposed approach.

9. One court very recently described this procedure in the following terms:

Where a sufficient foundation for its introduction has been laid, comparable matter held not obscene by the Supreme Court of the United States or of this state may be helpful in drawing this line; but, unless the comparable material equals or exceeds the subject book on all three elements of obscenity, to-wit: appeal to prurient interest; excess overaccepted standards; and lack of evidence of redeeming social importance, such comparable material does not require a finding of nonobscenity as a matter of law.

People v. Kaplan, 23 Cal.App.3d Supp. 9, 100 Cal.Rptr. 372, 376 (1972).

■ A number of cases which uphold the refusal to admit comparison evidence have nevertheless approved its use in this manner by the judge. This was noted in this court's decision in Huffman v. United States, 152 U.S.App.D.C. 238, 470 F.2d 386 (1971), petition for rehearing granted on other grounds Aug. 10, 1972:

> We do not say that decisions involving other publications can play no part in the evaluation of a particular magazine or book. *Certainly a judge passing on the legal "obscenity" of material before him will consider whether it is so close to others already passed on by the courts as to require a judicial ruling on obscenity without submission to the jury.*

152 U.S.App.D.C. at 255–256, 470 F.2d at 403–404 (emphasis added).[10] Similarly, in United States v. 392 Copies of Magazine "Exclusive," 253 F.Supp. 485 (D.Md.1966), aff'd 373 F.2d 633 (4th Cir. 1967), the court expressly left open the question of comparison evidence in a jury trial but concluded that such material from prior "adjudicated cases,

whether held obscene or not obscene, should always be considered by the Court as illuminating the opinions rendered in those cases, and the items offered have been so considered." 253 F. Supp. at 495. The use of comparative material to determine obscenity as a matter of law also is appropriate at the appellate level.[11]

■ Therefore the trial court clearly was correct in retaining this comparative legal method solely as his function and refusing to lay it before the jury. Furthermore, on review of the relevant exhibits we hold that the proffered evidence held nonobscene by the Supreme Court is not sufficiently similar to the exhibits at issue at trial as to have required a judgment of acquittal to be entered as a matter of law nor to require our reversal on appeal.[12]

**B.** *Proving Contemporary Community Standards*

Appellants also sought to introduce comparative evidence to aid the jury in determining the prevailing contemporary community standards.[13] The District

10. *See also* People v. Kaplan, *supra;* Huffman v. United States, 259 A.2d 342 D.C.App.1969), aff'd, 152 U.S.App.D.C. 238, 470 F.2d 386 (1971), petition for rehearing granted on other grounds, Aug. 10, 1972.

11. At times an appellate court, on review of the material involved in the prosecution, may decide that it is so similar to matter already held nonobscene by the Supreme Court as to require reversal as a matter of law. Spinar v. United States, 440 F.2d 1241 (8th Cir. 1971). *See also* Commonwealth v. LaLonde, 447 Pa. 364, 288 A.2d 782 (1972).

12. A more detailed discussion of the similarity of the exhibits appears *infra*, p. 379.

13. This concept of "contemporary community standards" is one of three elements of the test for obscenity laid down in the *Roth* case. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The standard, as further defined in Manual Enterprises, Inc. v. Day, 370 U.S. 478, 482, 486, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962) ; Memoirs

v. Massachusetts, 383 U.S. 413, 418–419, 86 S.Ct. 975, 16 L.Ed.2d 1 ; and Mishkin v. New York, 383 U.S. 502, 508, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966), requires a showing:

> (a) That the dominant theme of the material taken as a whole appeals to a prurient interest in sex, Roth v. United States, *supra*, 354 U.S. at 488–489, 77 S.Ct. 1304, and that where the material is designed for and primarily disseminated to a clearly defined deviant group, rather than the public at large, the prurient appeal requirement is satisfied if it appeals to the prurient interest of that group. Mishkin v. United States, *supra*, 383 U.S. at 508, 86 S.Ct. 958.
>
> (b) That the material is patently offensive because it affronts national contemporary community standards relating to the description or representation of sexual matters. Manual Enterprises, Inc. v. Day, *supra*, 370 U.S. at 482, 486, 82 S.Ct. 1432.
>
> (c) That the material is utterly without redeeming social value. Memoirs v. Massachusetts, *supra*, 383 U.S. at 418–419, 86 S.Ct. 975.

Court excluded all of defendants' proffered exhibits, applying the doctrine enunciated by this court in Womack v. United States, 111 U.S.App.D.C. 8, 294 F.2d 204, cert. denied, 365 U.S. 859, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961).[14]

■ In *Womack*, a broad range of comparison materials were proffered by the defendant in an effort to show a contemporary community standard of general acceptance of works like his own. The court rejected the comparison evidence as immaterial where the proper foundation had not been shown. Judge Prettyman described the necessary foundation as consisting of two elements: ". . . that the two types of matter are similar. And as another part of his foundation he must show a reasonable degree of community acceptance of works like his own." 111 U.S.App.D.C. at 10, 294 F.2d at 206. Appellants contend that this should not be the rule in modern obscenity prosecutions since in the *Womack* case there was such a wide divergence between the proffered exhibits and the materials that were the subject of that prosecution.[15] While it is true that the comparison evidence offered in the instant case is not as vastly different from the materials at issue in the trial as in *Womack*, this fact in no way undermines the soundness of the *Womack* test. The foundational requirements established in that case are eminently logical prerequisites under traditional concepts of materiality and relevancy.[16] Moreover, the *Womack* test has recently been applied in this circuit in Huffman v. United States[17] and has been explicitly adopted by a number of other circuits as well as in some state jurisdictions.[18]

■ We are fully cognizant of the notion that expert testimony on contemporary community standards is desirable and may even be a necessary requirement of due process. Most of the impetus behind the use of expert testimony in obscenity cases can be traced to the concurring opinions of Justices Harlan and Frankfurter in Smith v. California, 361 U.S. 147, 160, 169, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). Those opinions indicated that due process may require some kind of expert testimony to enlighten the court on the community standards element of the *Roth* test. Justice Harlan's opinion alludes specifically to the use of comparison evidence.[19]

Part B of this opinion deals with the second element of the *Roth* test (part (b) above).

14. "THE COURT: . . . I can indicate to you that I am going to be bound by this Womack case in this trial, that is, the opinion written by Judge Prettyman." (Tr. 21).

15. Indeed there was a wide divergence. For example, defendant attempted to introduce paintings of nudes by Titian, Rembrandt, Raphael, etc., for comparison purposes.

16. *See generally*, 1 Wigmore, Evidence §§ 24–29a (3d ed. 1940); McCormick, Handbook on the Law of Evidence § 185 (2d ed. 1954).

17. 152 U.S.App.D.C. 238, 470 F.2d 386 (1971), petition for rehearing granted on other grounds, Aug. 10, 1972. Petitions for rehearing were granted in *Huffman* on the narrow issue of the test for obscenity in light of the Supreme Court's grant of certiorari in the pending case of Alexander v. Virginia, 212 Va. 554, 186 S.E.2d 43 (1972), cert. granted, 408 U.S.

921, 92 S.Ct. 2490, 33 L.Ed.2d 332 (1972). The evidentiary questions involved here were not reached in the opinion accompanying the order granting the petition for rehearing nor is it at issue on certiorari to the Supreme Court.

In this jurisdiction *see also* United States v. Gower, 316 F.Supp. 1390, 1395 n. 11 (D.D.C.1970).

18. United States v. Manarite, 448 F.2d 583 (2nd Cir. 1971); United States v. Jacobs, 433 F.2d 932 (9th Cir. 1970); United States v. West Coast News Co., 357 F.2d 855 (6th Cir. 1966) rev'd sub nom. on other grounds, Aday v. United States, 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309 (1967); Huffman v. United States, 259 A.2d 342 (D.C.App. 1969), aff'd, 152 U.S.App.D.C. 238, 470 F.2d 386 (1971), petition for rehearing granted on other grounds, Aug. 10, 1972; State v. Carlson, 291 Minn. 368, 192 N.W.2d 421 (1971).

19. 361 U.S. at 172, 80 S.Ct. 215. However, he does not go so far as to say the exclusion of comparsion evidence would

Many other decisions have echoed this position on the need for objective guidelines to help the court reach a rational decision under the admittedly imprecise *Roth* formula.[20] Yet it is clear that the *Womack* test is perfectly compatible with the *Smith* policy and many cases adopting the *Womack* rule have excluded comparative evidence while simultaneously recognizing the validity of the *Smith* rationale.[21] In this case this inherent consistency is exceedingly apparent. There was in fact extensive expert testimony on both sides as to contemporary community standards. That is all that the Harlan and Frankfurter opinions can be read to have required. As the Sixth Circuit has stated in this regard:

> [W]e are not unmindful of the relevant observations of Justices Frankfurter and Harlan in their concurring opinions in Smith v. People of State of California, 361 U.S. 147, 164, 165, 172, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). We do not content ourselves by saying that those concurrences did not necessarily express the majority view, but are agreed that what the District Judge did in this case [excluding com-

parison evidence under *Womack*] does not offend the views of those distinguished Justices. We consider that their suggestions of a legitimate range of admissible expert testimony were satisfied by what the experts here were allowed to tell the jury.

United States v. West Coast News Co., 357 F.2d 855, 859 (6th Cir. 1966), rev'd sub nom. on other grounds, Aday v. United States, 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309 (1967). The *Smith* concurring opinions were in no way intended to eliminate valid, rational rules governing the admissibility of evidence.

*Womack* merely requires an adequate foundation to be laid for the introduction of comparison evidence. Since the issue at hand is the nature of contemporary community standards with respect to "works like his own," in order for there to be a rational basis for its admission there must be a showing that the proffered evidence (1) is similar to his own, and (2) enjoys a reasonable degree of community acceptance. The burden is on the defendant [22] and in the absence of such a showing,[23] the evi-

---

constitute a violation of due process. In his opinion only a total absence of all kinds of expert and objective testimony would so violate the due process clause.

20. *See, e. g.*, United States v. Klaw, 350 F.2d 155, 170 (2nd Cir. 1965) ; United States v. 392 Copies of Magazine "Exclusive", 253 F.Supp. 485 (D.Md.1966), aff'd 373 F.2d 633 (4th Cir. 1967) ; Woodruff v. State, 11 Md.App. 202, 273 A.2d 436 (1971) ; In re Seven Magazines, 268 A.2d 707 (R.I.1970) ; Commonwealth v. LaLonde, 447 Pa. 364, 288 A.2d 782 (1972). *See also*, Model Penal Code § 251.4. A small number of cases have understood this general policy to specifically mandate the admission of comparative evidence. Woodruff v. State, 11 Md. App. 202, 273 A.2d 436 (1971) ; Yudkin v. State, 229 Md. 223, 182 A.2d 798 (1962) ; In re Harris, 56 Cal.2d 879, 16 Cal.Rptr. 889, 366 P.2d 305 (1961). *But cf.* cases cited note 21, *infra*, which allude to the *Smith* rationale but find no inconsistency in also excluding comparative evidence.

21. United States v. West Coast News, Co., 357 F.2d 855, 861 (6th Cir. 1966) rev'd sub nom. on other grounds Aday v. United States, 388 U.S. 447, 87 S.Ct. 2095, 18 L. Ed.2d 1309 (1967) ; United States v. 392 Copies of Magazine "Exclusive", 253 F. Supp. 485 (D.Md.1966) aff'd 373 F.2d 633 (4th Cir. 1967) ; People v. Finkelstein, 11 N.Y.2d 300, 229 N.Y.S.2d 367, 183 N.E.2d 661 (1962). *Compare* United States v. Klaw, 350 F.2d 155 (2nd Cir. 1965) *with* United States v. Manarite, 448 F.2d 583 (2nd Cir. 1971).

22. Womack v. United States, 111 U.S.App. D.C. 8, 10, 294 F.2d 204, 206, cert. denied, 365 U.S. 859, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961).

23. Such a showing can be made in a variety of ways. The most desirable method would entail a full hearing out of the jury's presence in which the defendant can attempt to demonstrate the necessary foundational requirements. A good example of the proper procedural stance in these matters is found in United States v. West Coast News Co., 228 F.

dence must be excluded as lacking sufficient probative value.[24] In this regard the trial judge must be allowed "wide discretion as to whether to permit the introduction of such allegedly comparable publications" since "the admission of a number of different publications alleged to be comparable to the publication in issue might make the trial unmanageably complex and lengthy."[25]

We have carefully reviewed the various exhibits involved in this case and hold that the trial judge did not abuse his discretion in excluding all the proffered comparison evidence. Most of the evidence sought to be introduced was simply unsusceptible of a convincing showing of similarity to the defendants' works. In this connection it is important to realize that "slight" variations in format may well produce vastly different consequences in obscenity determinations. This court, in *Huffman*, recently surveyed the state of obscenity law and observed with regard to photographs of males that various factors such as indoor activity as opposed to out-door nudism and "duals" as opposed to singles,"[26] result in wholly different legal characterizations.[27] In *Huffman*, the defendant sought to introduce magazines picturing "singles" for comparison with his works which included "duals." We held:

> These magazines . . . fall within the category of "singles". As discussed above, this type of magazine is clearly distinguishable from the genre involved here. . . . Once the judge declines to dismiss the prosecution on legal grounds [*see* part A, *supra*] we think it becomes a matter of sound discretion, that takes into account relatedness and remoteness, whether it is more likely to be helpful or confusing for the jury to make comparisons with publications passed on in previous cases. In view of the important distinctions between the "duals" photographs in the magazines on trial and the singles in previous cases, we hold the judge did not abuse his discretion in ruling against appellants on this issue. Womack v. United States, 111 U.S.App.D.C. 8, 10, 294 F.2d 204, 206 cert. denied, 365 U.S. 859 [, 81 S.Ct. 826, 5 L.Ed.2d 822] (1961).[28]

---

Supp. 171, 191–201 (W.D.Mich.1964) aff'd 357 F.2d 855 (6th Cir. 1966), rev'd sub nom. on other grounds Aday v. United States, 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309 (1967), in which the judge conducted a preliminary voir dire of the defendant's experts:

> Instead of foreclosing the introduction of these books for comparison, on the ground that defendants failed to submit an offer of proof to preserve the contested issue, the court granted a full opportunity for the defendants to present oral testimony, out of the presence of the jury, to establish the required similarity and acceptability as the basis for a "ticket of admission" for such proffered evidence. See Womack v. United States, supra, (294 F.2d page 206), citing Wigmore on Evidence, supra.

228 F.Supp. at 196.

24. *See* note 16, *supra*.

25. Books, Inc. v. United States, 358 F.2d 935, 939 (1st Cir. 1966) rev'd on other grounds, 388 U.S. 449, 87 S.Ct. 2098, 18 L.Ed.2d 1311 (1967). *See also* United States v. West Coast News Co., 357 F.2d 855, 860 (6th Cir. 1966) rev'd sub nom. on other grounds Aday v. United States, 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309 (1967) ("to avoid intolerable flooding of the record") ; Huffman v. United States, *supra*, note 17, 152 U.S.App.D.C. at 256, 470 F.2d at 404; State v. Von Cleef, 102 N.J.Super. 102, 245 A.2d 495 (1968) ; State v. Henry, 250 La. 682, 198 So.2d 889, 896 (1967). *See also* Miller v. United States, 431 F.2d 655 (9th Cir. 1970).

26. "Singles" is the trade term for photographs of only one model, while "duals" applies to photographs of two or more. *See* note 4, *supra*.

27. *See* Huffman v. United States, *supra* note 17, 152 U.S.App.D.C. at 253, 256, 470 F.2d at 401, 404.

28. Id. 152 U.S.App.D.C. at 255–256, 470 F.2d at 403–404. *See also* Huffman v. United States, 259 A.2d 342, 344 (1969) : ". . . there is a *vast difference* between photographs portraying sexual activity between two nudes and photo-

Turning to the evidence offered by appellants for comparison purposes in this case, we find that two of the magazines are labeled as marriage manuals and depict heterosexual activity between adults. Another magazine portrays heterosexual acts between adult members of different racial groups. Yet another magazine shows nude and partially nude females in various erotic poses. Appellants also proffered an illustrated version of the Report of the President's Commission on Obscenity containing pictures which run the gamut of bestiality to normal heterosexual activity. The remaining magazines and ten posters depict adult males in various stages of nudity. Many of them portray scenes from the day-to-day life at nudist colonies, while others portray the physiques of weight lifters. Appellant seeks to draw our special attention to certain particular exhibits alleged to be the most similar to those at issue here.[29] Yet on examination we find that they too are vastly dissimilar to his publications. Unlike the subject matter of this prosecution, there are no pictures of young boys in "duals" caressing and fondling one another in various positions of simulated sexual activity. Some of the proffered evidence does include young boys in groups but only photographed out-of-doors and containing no suggestion of sexual activity.[30] Under these circumstances we hold the trial judge

was well within his wide discretion[31] in excluding these exhibits on grounds of insufficient similarity.

▮▮▮▮▮ Appellant also had sought to introduce eight magazines published by one of their "competitors" (Tr. 673) which clearly meet the test of similarity.[32] With respect to these eight exhibits the Government contends, however, that appellants failed to meet their burden of showing a reasonable degree of community acceptance as required by the second element of the *Womack* test. This issue has arisen in a number of obscenity cases in which the defendant has sought to introduce similar material purchased in the community in an effort to show a degree of community tolerance and acceptance for works like his own.[33] Of course, a determination of the precise point at which a publication is so widely sold and is so generally available in the community as to warrant a finding of community acceptance is difficult to fix with assurance. And a few cases have held that in close cases it is error to exclude such comparison materials.[34] However, it is not difficult to identify that which clearly does not even approach an appreciable level of community acceptance and to exclude that material as possessing so little probative value as to serve only to impede the resolution of the issues. A distinction must be made between a showing of "mere

graphs of single nudes. The tendered exhibits would have had no probative weight on the issue before the jury." (emphasis added).

29. *A Hundred Naked Rebels*, Defense Exhibits No. 27 and 33; and the *Butch* and *Tiger* books, Exhibits No. 34–38. (Appellants' Br. at 16).

30. This describes *A Hundred Naked Rebels*. The *Butch* and *Tiger* books deal with adults. Most are singles but in the few duals the models are separated and there is no simulated sexual activity.

31. *See* note 25, *supra* and accompanying text.

32. Defense Exhibits 32–32g.

33. Appellants also contend that various court decisions around the country ac-

quitting other defendants on obscenity charges relating to allegedly comparable materials serve a function outside of the "matter of law" role discussed· *supra*, Part A, in that they indicate a growing community acceptance of these materials. However, just as the evidence involved in those cases must be similar to appellants' works in order to be introduced as comparison evidence, these court decisions have no logical bearing on the community acceptance of the materials at issue in this case if there is a failure to show the *Womack* foundation of similarity.

34. Woodruff v. State, 11 Md.App. 202, 273 A.2d 436 (1971); Yudkin v. State, 229 Md. 223, 182 A.2d 798 (1962); In Re Harris, 56 Cal.2d 879, 16 Cal.Rptr. 889, 366 P.2d 305 (1961).

availability" and that of "a reasonable degree of community acceptance:"

> Evidence of mere availability of similar materials is not by itself sufficiently probative of community standards to be admissible in the absence of proof that the material enjoys a reasonable degree of community acceptance. Womack v. United States, 111 U.S.App.D.C. 8, 294 F.2d 204, 206 (1961), cert. denied, 365 U.S. 859, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961). Such proof would normally be supplied by expert witnesses. No such proof was offered. In the absence of this foundation, the allegedly similar pornographic material was properly excluded. Mere availability of similar material by itself means nothing more than that other persons are engaged in similar activities.

United States v. Manarite, 448 F.2d 583, 593 (2nd Cir. 1971). In our case, appellants spoke of the materials as having been easily purchased from certain specific suppliers in New York. Yet such esoteric materials purchased from a few vendors known only to those in the trade with no general circulation are not probative on the issue of contemporary community standards. This was well stated in the "Exclusive" case:

> The standards of "the Block" [an area in Baltimore in which there are a number of shops which deal in pornographic materials] are not the standards to be applied in this case, any more than the standards of the most straight-laced persons. *Material purchased in such specialized outlets has little or no value in determining contemporary community standards.* Ginzburg v. United States, [383 U.S.

463,] 86 S.Ct. [942,] 969 [,16 L.Ed.2d 31] (1966).[35] (Emphasis added.)

The only evidence appellants offered to show community acceptance of these magazines was the fact that as of the date of this trial, no criminal charges had been lodged against their competitors (Tr. 673–75), but mere failure to prosecute does not begin to constitute a sufficient showing on this issue. We hold that with respect to these magazines, appellants have woefully failed to show a reasonable degree of community acceptance. Without such evidence the trial judge can in no way be said to have abused his discretion in excluding the proferred evidence.

C. *Cross-Examination of Expert Witnesses*

Finally, appellants argue that at the very minimum, comparison evidence should be allowed to be presented to the various expert witnesses on the issue of community acceptance, particularly for cross-examination purposes.[36]

The use of comparative evidence for *direct* testimonial purposes on the issue of contemporary community standards is clearly governed by the resolution of the issue of its use as primary autoptical evidence. *See* Part B, *supra.* That is, once the court has determined under the *Womack* guidelines that the probative value of the comparison evidence is insufficient to be material on the issue of community standards, it is equally within the judge's discretion, indeed almost incumbent upon him for reasons of consistency, to exclude the introduction of such evidence through the expert witnesses.[37]

35. United States v. 392 Copies of Magazine "Exclusive", 253 F.Supp. 485, 496 (D. Md.1966) aff'd 373 F.2d 633 (4th Cir. 1967). *See also* United States v. Gower, 316 F.Supp. 1390 (D.D.C.1970); United States v. Hochman, 175 F.Supp. 881 (E. D.Wis.1959); People v. Finkelstein, 11 N.Y.2d 300, 229 N.Y.S.2d 367, 183 N.E. 2d 661 (1962).

36. Counsel for appellants indicated at oral argument that he would have used the

materials declared nonobscene by the Supreme Court to impeach the credibility of the Government's expert witnesses who presumably would have testified that they considered these materials as exceeding the bounds of contemporary community standards.

37. It is only logical and certainly well within the judge's discretion to refuse to permit witnesses to comment on matters already deemed immaterial to the issue

A more difficult question is whether such materials are to be used for cross-examination purposes. It may indeed be helpful for the jury to know that the expert witness holds an opinion contrary to that of the Supreme Court.[38] Apparently one case in this jurisdiction has allowed such use of comparative evidence.[39] However, this is definitely a matter in which the trial judge is to be afforded wide discretion. As Judge Wyzanski has said in a First Circuit decision upholding the trial judge's discretionary exclusion of allegedly comparable material as well as his refusal to allow expert testimony with respect to them:

> Nor is a judge required to admit as a touchstone for the jury *even those books which are admittedly not obscene.* The admission of a number of different publications alleged to be

comparable to the publication in issue might make the trial unmanageably complex and lengthy. The trial judge must be allowed wide discretion as to whether to permit the introduction of such allegedly comparable publications, *and as to whether to allow the witnesses to be examined in detail on publications other than the one directly at issue.*[40] (Emphasis added.)

Not only do the dangers of excessive trial length, complexity and unmanageability weigh heavily in favor of according the trial judge broad discretion, but also the undesirability of allowing the jury to speculate as to the basis for a Supreme Court holding of nonobscenity. That is, in light of the various factors that enter into a legal finding of obscenity and the generally confusing state of this area of law at the time of this trial,[41] it is clearly a matter of broad

at hand. *Cf.* State v. Henry, 250 La. 682, 198 So.2d 889, 895–896 (1967).

38. At least one court has felt this to be true:
> While [the Government's] witnesses testified that in their personal view "Candy" far exceeded customary limits of candor, they admitted being totally unfamiliar with contemporary fiction. Two of the witnesses had indeed read "Tropic of Cancer," but despite a clear Supreme Court holding to the contrary [Grove Press, Inc. v. Gerstein, 378 U.S. 577, 84 S.Ct. 1909, 12 L.Ed.2d 1035 (1964) ; see Commonwealth v. Robin, 421 Pa. 70, 218 A.2d 546 (1966)] they continued to believe the book ought to be banned. While we respect these personal ·opinions, it does indicate that their views of contemporary standards differ markedly from those of the Supreme Court. [Some footnotes omitted.]

Commonwealth v. Dell Publications, Inc., 427 Pa. 189, 233 A.2d 840, 848 (1967).

39. Huffman v. United States, *supra* note 17, 152 U.S.App.D.C. at 243, 470 F.2d at 391:
> During the trial appellants attempted to challenge the assertion that the magazines were obscene by offering twenty-six other publications that had previously been declared non-obscene by the Supreme Court. The trial court refused to allow appellants to make this

comparison to the jury *but permitted appellants to ask Dr. Cavanaugh whether six of the exhibits appealed to prurient interests.* Dr. Cavanaugh testified that individual magazines in this group would appeal to the prurient interests of various classes of persons, including male and female homosexuals, heterosexual males, and pedophiliacs. (emphasis added).

40. Books, Inc. v. United States, 358 F.2d 935, 939 (1st Cir. 1966) rev'd on other grounds 388 U.S. 449, 87 S.Ct. 2098, 18 L.Ed.2d 1311 (1967).

41. In recent years the United States Supreme Court has on at least twenty-nine occasions reversed obscenity convictions and determinations involving various kinds of expression (books, photomagazines, films, etc.) on the authority of its cryptic per curiam opinion in Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967). (footnotes omitted). Commonwealth v. LaLonde, 447 Pa. 364, 288 A.2d 782 (1972) ; *see also* note 8 *supra.* (A full list of the twenty-nine decisions reversed by *Redrup* appears at n. 6 of *LaLonde.*) This has left the courts in some confusion as to the current constitutional standards for obscenity. More importantly, the Supreme Court has agreed to review many of the crucial questions in this area this term.

discretion for the trial judge to balance the dangers of jury confusion against the possible benefits of effectively undermining the credibility of a given witness.[42] In this case the decisions referred to by appellant in which the comparison evidence was held nonobscene were particularly cryptic and to infer a lack of credibility from any inconsistencies between the expert and that decision would be highly speculative and confusing to the jury. Even absent this factor, the judge is always to be allowed broad discretion as to such testimonial matters.[43] We hold here that the judge properly exercised that discretion.

Therefore, with respect to the issue of comparison evidence as a whole, we affirm the rulings of the trial court.

## II. *Search and Seizure Issue*

Appellants raise three objections to the warrant used to seize the various incriminating materials involved in this case. The warrant is claimed to be invalid (1) on its face for overbreadth, (2) for lack of a prior adversary hearing, and (3) as calling for a search for "mere evidence" as distinguished from a search for fruits or implements of crime. We find all three objections to be wholly without merit and decline to reverse the convictions on these grounds.

First, there can be no serious claim that the warrant was impermissibly vague as to the items to be seized. The warrant incorporates by express reference the underlying affidavit attached thereto which quite specifically details the records and documents to be obtained in the search. Under these circumstances, we have held the warrant to meet the necessary specificity requirements.[44] Although during execution of the warrant some other materials were seized, all of them were returned and none were used at appellants' trial.[45] This clearly does not affect the validity of appellants' convictions.[46]

Second, the requirement of an adversary hearing prior to the issuance of a warrant is derived from Supreme Court decisions[47] holding that the public's First Amendment rights would be jeopardized if a judge were allowed to suppress large numbers of copies of an allegedly obscene publication simply on the basis of an *ex parte* decision on the issue of obscenity. This authority is clearly inapposite here since this search warrant did not authorize the seizure of any materials protected by the First Amendment but only business records and other correspondence relating to the publication, sale and distribution of the magazines listed in the affidavit and the identity of some of the models.[48]

42. Admittedly it might be of value to show that an expert witness disagreed with the Supreme Court on a matter in which there has been a full, considered opinion clearly holding a particular publication nonobscene. However, there seems little value in allowing the jury to speculate as to the reasons for the court's decision in the numerous reversals in which the court merely cites the cryptic *Redrup* opinion. *See* note 41 *supra*. In either situation it would be appropriate for the judge to instruct the jury as to the limited weight to be accorded to such a Supreme Court decision and that it is only relevant to the credibility of this particular witness.

43. *See, e. g.,* 3 Wigmore, Evidence § 770 (Chadbourn Rev. 1970) ; McCormick, Handbook of the Law of Evidence § 29 (2d ed. 1954). .

44. Huffman v. United States, *supra* note 17, 152 U.S.App.D.C. at 245, 470 F.2d at 393 n. 7; Moore v. United States, 149 U.S.App.D.C. 150, 461 F.2d 1236 (1972).

45. United States v. Womack, Crim. No. 1351–70 (D.D.C., filed May 17, 1971) (Memorandum opinion and order on motion to suppress).

46. Huffman v. United States, *supra* note 17, 152 U.S.App.D.C. at 245, 470 F.2d at n. 7.

47. A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) ; Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).

48. Moreover, even assuming *arguendo* that a prior adversary hearing were required, the remedy is merely to return the materials. A reversal of the convictions

■ Lastly, appellants' "mere evidence" argument and citation of the *Gouled* case [49] is entirely inappropriate in light of the Supreme Court's complete disavowal of that doctrine in Warden v. Hayden, 387 U.S. 294, 300–310, 87 S.Ct. 1642, 1646–1651, 18 L.Ed.2d 782 (1967) in holding there was no valid basis for prohibiting "intrusions to secure 'mere evidence' " and permitting "intrusions to secure fruits, instrumentalities, or contraband."

Had we reached opposite conclusions on either the evidentiary or the search and seizure issues involved in this case, we would have reversed the convictions. However, since we have upheld the trial court on these issues, we release this opinion at this time and order that the case be held in abeyance with respect to the First Amendment issues to await the decision of the Supreme Court in the pending obscenity cases.

Order accordingly.

### SUPPLEMENTAL OPINION
Filed Dec. 31, 1974

MacKINNON, Circuit Judge:

On December 7, 1972, this court issued an opinion disposing of the evidentiary issues presented by these appeals. That decision deferred action on the following issue:

> whether the eight magazines which formed the basis of appellants' convictions were obscene and not within the free speech guarantees of the First Amendment

pending the decisions in several obscenity cases then before the Supreme Court. Original Op., *supra*, at 372. The decisions in those cases have since been issued. Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (1973). We now dispose of the remaining issue.

■ *Miller, supra,* established the following three tests for determining whether a work is obscene:

(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, . . .

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and

(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

413 U.S. at 24, 93 S.Ct. at 2615. Appellants are entitled to the benefit of any constitutional principle stated in *Miller.* See Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Only *Miller* test (b) involves modifications of prior principles which would potentially benefit appellants.[1]

■ Appellants were convicted for violations of 18 U.S.C. § 1461 (mailing obscene matter) and § 1462 (interstate transportation of obscene matter). In *Hamling, supra,* the Court held that section 1461 was not unconstitutionally vague in light of the prior construction

---

would not be required absent the aggravating factor of a search of impermissible scope. Huffman v. United States, *supra* note 17, 152 U.S.App.D.C. at 245, 470 F.2d at 393. Since here the scope is clearly reasonable, reversal would not be appropriate even if we were to agree with appellants' contentions with regard to the need for a prior adversary hearing.

49. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921) (Appellants' Br. at 35).

1. This case was submitted to the jury under instructions conforming to *Roth-Memoirs* (Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); Roth v. United States, 354 U.S. 476, 97 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)), which were more favorable to appellants than *Miller* test (c), *supra.*

**384**

of that section in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and therefore the statute was sufficient to support a conviction under *Miller* test (b). In United States v. 12 200-Ft. Reels of Film, 413 U.S. 123, 130 n.7, 93 S.Ct. 2665, 2670, 37 L. Ed.2d 500 (1973), the Court indicated it was prepared to construe the terms of section 1462 "as limiting regulated material to patently offensive representations or descriptions of that specific 'hard-core' sexual conduct given as examples in *Miller* . . . ." The Court reaffirmed this intent in *Hamling*. Thus both statutes under which appellants were convicted satisfy the requirements of *Miller* test (b).

 In *Miller*, the Court listed certain "plain examples" of the type of material which a statute could regulate under *Miller* test (b):

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

413 U.S. at 25, 93 S.Ct. at 2615. The magazines which formed the basis for appellants' convictions are described at note 4 of our original opinion. It is readily apparent that these magazines contain material portraying most of the "plain examples" of obscenity which *Miller* held sufficient to support a conviction. We find beyond a reasonable doubt that this case would have reached exactly the same result had it been tried using (b) of the *Miller* tests. See United States v. Gower, 164 U.S.App.D.C. 98, 503 F.2d 189 (1974). Nothing approaching the kind of doubt as to the application of *Miller* to the materials in question which required remand in Huffman v. United States (Pryba v. United States), 163 U.S.App.D.C. 417, 502 F.2d 419 (1974) is present in this case.

Appellants argued that the governmental interest in regulating obscenity is limited to the protection of juveniles and the prohibition of public display and pandering of such materials. The Supreme Court has since rejected the argument that the role of the government is so limited. See Paris Adult Theatre I v. Slaton, 413 U.S. 49, 57–69, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973).

Appellants' convictions are accordingly affirmed as to all counts.

Affirmed.