The STATE of Ohio, Appellee,

v.

KEATON et al., Appellants.

[Cite as *State v. Keaton* (1996), 113 Ohio App.3d 696.]

Court of Appeals of Ohio,
Twelfth District, Fayette County.

Nos. CA95–09–021, CA95–09–022.

Decided Aug. 26, 1996.

*Steven H. Eckstein,* Fayette County Prosecuting Attorney, for appellee.

*Berkman, Gordon, Murray & DeVan, J. Michael Murray, Lorraine R. Baumgardner* and *Brooke F. Kocab,* for appellants.

———

POWELL, Judge.

Defendants-appellants, Midwest Pride IV, Inc. ("Midwest") and James Keaton, appeal from their convictions for pandering obscenity in violation of R.C. 2907.32.

On August 20, 1993, an undercover agent of the Fayette County Sheriff's Department entered the Lion's Den Adult Bookstore in Jeffersonville, Ohio and purchased two sexually oriented videotapes entitled "Carolyn Monroe X-posed" and "Climactic Scenes Number 28." The agent turned the videotapes over to the Fayette County Sheriff's Office.

On October 4, 1993, the Fayette County Grand Jury indicted Midwest, the owner of the Lion's Den, and Keaton, the general manager of the Lion's Den, on one count each of pandering obscenity. The case was tried to a jury on August 28, 1995.

On August 31, 1995, the jury found both Midwest and Keaton guilty. The trial court sentenced Keaton to six months' imprisonment and imposed a $1,000 fine. The trial court fined Midwest $5,000. Appellants now appeal, setting forth the following assignments of error for review:

Assignment of Error No. 1:

"The trial court erred in prohibiting defendants from arguing that the charged materials were protected by the First Amendment and in excluding all evidence proffered by the defendants in their case in chief."

Assignment of Error No. 2:

"The trial court erred in its instructions to the jury by failing to give adequate instruction on the constitutional test for obscenity and in refusing to include in its charge correct, pertinent and timely jury instructions requested by defendants."

Assignment of Error No. 3:

"The trial court erred in refusing to excuse for cause two jurors who admitted they held strong beliefs against sexually explicit materials which prevented them from assuming roles as fair and impartial jurors."

Assignment of Error No. 4:

"The trial court erred and abused its discretion in sentencing appellant Keaton to the maximum-six months [*sic*] in jail and a $1,000.00 fine."

■ In their first assignment of error, appellants contend that the trial court erred in prohibiting them from arguing to the jury that the sexually oriented videotapes at issue were constitutionally protected speech under the First Amendment.

While the First Amendment to the United States Constitution, through the Fourteenth Amendment, provides that a state may not abridge a person's freedom of speech, *Urbana ex rel. Newlin v. Downing* (1989), 43 Ohio St.3d 109, 114, 539 N.E.2d 140, 145–146, this protection is not absolute. *Miller v. California* (1973), 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419, 430. The United States Supreme Court has settled clearly that obscene material is afforded no First Amendment protection. *Id.*

■ The term "obscenity" is a legal term of art, the definition of which is a question of law.[1] *Urbana* at 114, 539 N.E.2d at 145–146 (citing *Hamling v. United States* [1974], 418 U.S. 87, 118, 94 S.Ct. 2887, 2908, 41 L.Ed.2d 590, 621). Whether materials meet the established legal definition of obscenity, however, is determined by the trier of fact. *Miller* at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 430–431. In *Miller*, the United States Supreme Court articulated the following three-part test for the trier of fact to determine whether material is obscene:

"(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest * * *; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id.* at 24, 93 S.Ct. at 2615, 37 L.Ed.2d at 431, quoting *Kois v. Wisconsin* (1972), 408 U.S. 229, 230, 92 S.Ct. 2245, 2246, 33 L.Ed.2d 312, 315.[2] See *State v. Burgun* (1978), 56 Ohio St.2d 354, 357–358, 10 O.O.3d 485, 487, 384 N.E.2d 255, 259.

The record in the present case shows that the trial court ruled prior to trial that appellants would "not be permitted to suggest, in the presence of the jury, that the First Amendment protects, provides a defense for, or permits the distribution of, obscene material." At no point, however, did the trial court prohibit appellants from arguing that the videotapes did not meet the legal

---

1. Whether any material or performance is legally "obscene" is determined in Ohio by the application of R.C. 2907.01(F). This definition is limited by the First and Fourteenth Amendments as protected via the *Miller* test discussed *infra. Miller*, 413 U.S. at 23–24, 93 S.Ct. at 2614, 37 L.Ed.2d at 430–431.

2. "Sexual conduct" is defined in Ohio as "vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex." R.C. 2907.01(A).

definition of obscenity under *Miller.* The order simply precluded appellants from suggesting that material meeting the legal definition of obscenity is nevertheless constitutionally protected. As the trial court ruling was in accordance with *Miller* and *Burgun,* and appellants were not barred from presenting a First Amendment defense to the pandering obscenity charges, we find that the trial court did not err in its pretrial ruling.

Appellants also argue that the trial court erred by excluding evidence appellants proffered to show that the videotapes did not meet the *Miller* definition of obscenity. Prior to appellants' trial, three Lion's Den employees were tried for pandering obscenity in Fayette County. The juries in all three cases returned verdicts of not guilty. At trial, appellants attempted to introduce the materials alleged to be obscene in the previous cases. Appellants believed that the materials were similar to the videotapes in the instant case and argued that the previous not-guilty verdicts were based solely upon the juries' findings that the materials involved were not obscene under the *Miller* test. Thus, appellants asserted that the materials, in conjunction with the not-guilty verdicts, were relevant to show that the videotapes were not obscene. The trial court disagreed and excluded both the materials and the not-guilty verdicts.

Material comparable to the alleged obscenity at issue may be admissible as relevant to show a contemporary community standard of general acceptance of the alleged obscenity. *United States v. Womack* (C.A.D.C.1975), 509 F.2d 368, 376–377. See *Womack v. United States* (C.A.D.C.1961), 294 F.2d 204. The material is relevant only where the defendant has laid a proper foundation demonstrating that the material (1) is similar to the alleged obscenity at issue and (2) enjoys a reasonable degree of community acceptance. *Womack,* 509 F.2d at 377.

The trial court has broad discretion to admit or exclude evidence of allegedly comparable material. *Id.* at 378. An abuse of discretion is "more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855, paragraph two of the syllabus.

After review of the record, we find that appellants have failed to show that the trial court abused its discretion by excluding the materials. First, the trial court reasonably could have found that the materials from the previous trials were not similar to the videotapes at issue in this case. Appellants failed to proffer the materials for inclusion into the record in the instant case and, thus, the only indication before us that the materials are similar is the argument of appellants' counsel. A statement of belief of appellants' counsel is certainly an insufficient basis for this court to find that the trial court abused its discretion in this respect,

as " 'slight' variations in format may well produce vastly different consequences in obscenity determinations." *Womack*, 509 F.2d at 378.

Second, the trial court could have reasonably found that appellants had failed to demonstrate that the previous juries' verdicts necessarily showed that the materials were not obscene. R.C. 2907.32 defines the offense of pandering obscenity as follows:

"(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:

" * * *

"(2) Promote or advertise for sale, delivery or dissemination; sell, deliver, publicly disseminate, publicly display, exhibit, present, rent or provide * * * any obscene material;

" * * *

"(5) Buy, procure, possess, or control any obscene material with purpose to violate division (A)(2) * * * of this section."

Our review is limited, as appellants failed to preserve the records of the prior trials for our review. It is clear, however, that only one element of the offense concerns whether the videotapes were obscene. A distinct possibility exists that the juries' verdicts were predicated on findings that the prosecution failed to prove any of the other elements of the offense beyond a reasonable doubt rather than that the materials were not obscene. Accordingly, we cannot find that the trial court abused its discretion in excluding the materials.

Ultimately, we find that the trial court did not err in ruling that appellants could not suggest that obscenity was afforded constitutional protection and in excluding the allegedly obscene materials subject to the previous verdicts. The trial court rulings did not deprive appellants of their right to introduce other evidence, including expert and lay testimony, concerning the obscenity test specified in *Miller*. See *Kaplan v. California* (1973), 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492; *Smith v. California* (1959), 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205. Accordingly, appellants' first assignment of error is overruled.

■ Appellants' second assignment of error alleges that the trial court erred in its instructions to the jury concerning their determination of whether the videotapes were protected by the First Amendment. When an appellate court reviews a claim that a jury instruction was erroneous, the instruction must not be viewed in isolation but in its entirety, or in the context of the overall charge. *State v. Frazier* (1995), 73 Ohio St.3d 323, 331, 652 N.E.2d 1000, 1008–1009. In the instant case, the trial court instructed the jury regarding the *Miller* test as follows:

"The test to determine whether the material, the work, or a performance is obscene, in addition to the statutory definition which I have just given you, is a three-part test. In order for the material to be obscene, all three elements of this test must be proved beyond a reasonable doubt:

"(1) Whether the average person, applying contemporary community standards would find the work, taken as a whole, appeals to the prurient interest.

"(2) Whether * * * to the average person applying contemporary community standards[,] the work depicts or describes in a patently offensive way, sexual conduct as defined in these instructions.

"(3) Whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value. The test for determining if material has serious literary, artistic, political or scientific value is whether a reasonable person would find such value in the material, taken as a whole.

" * * * *

"The term 'average person' does not include any number of people, the majority, or a few, or some, but is a term connoting a composite or synthesis of the community. The average person is one with average sex instincts. A prurient interest is not the same as a candid, normal or healthy interest in sex, rather it is a shameful or morbid interest in nudity, sex, or excretion which goes substantially beyond customary limits of candor in description or representation of such matters."

Appellants claim that the court erred in its definition of "prurient interest," arguing that "there is no legal precedent for defining prurient interest in terms of 'nudity' or 'excretion.'" Appellants also argue that the trial court illogically defined prurient interest with reference to "candor."

The record shows, however, that the trial court instructed the jury concerning the definition of prurient interest verbatim from United States and Ohio Supreme Court decisions. See *Roth v. United States* (1957), 354 U.S. 476, 487, 77 S.Ct. 1304, 1310, 1 L.Ed.2d 1498, 1508, fn. 20, citing A.L.I., Model Penal Code (Tent.Draft No. 6, 1957), Section 207.10(2); *Urbana*, 43 Ohio St.3d at 116, 539 N.E.2d at 147–148. These decisions clearly note that a prurient interest "is a 'shameful or morbid interest in *nudity*, sex, or *excretion* * * * [which] goes substantially beyond customary limits of *candor* in description or representation of such matters.'" (Emphasis added.) *Urbana* at 116, 539 N.E.2d at 147, quoting *Roth* at 487, 77 S.Ct. at 1310, 1 L.Ed.2d at 1508, fn. 20. As the trial court and this appellate court are bound by the legal definitions of the United States and Ohio Supreme Courts, we find that the trial court did not err in its definition of prurient interest.

▉ Appellants also argue that the trial court erred by failing to explain, rather than merely recite, the *Miller* test. The trial court is to instruct the jury by clearly and concisely stating the principals of law necessary to allow a fair verdict. *State v. Perryman* (1976), 49 Ohio St.2d 14, 29, 3 O.O.3d 8, 17, 358 N.E.2d 1040, 1049–1050. A trial court must provide full and adequate instructions to the jury on the essential elements of the crime. *United States v. Salliey* (C.A.4, 1966), 360 F.2d 699, 702; *Byrd v. United States* (C.A.D.C.1965), 342 F.2d 939, 940–941.

In the instant case, the trial court's jury instructions concerning the *Miller* test were substantially similar to the Ohio Jury Instructions, which, in turn, were derived from the *Burgun, Miller* and *Urbana* opinions. See 4 Ohio Jury Instructions (1996), 507.31, Section 8. While the trial court did not explain or define each word found in the instructions, we find that that is not required. The instructions fully recited the law without misstatement and provided the jury with the information necessary to allow a fair verdict. Therefore, that trial court did not err in its instructions concerning the *Miller* test.

Appellants further argue that the trial court erred by refusing to adopt two of appellants' submitted jury instructions. To prevail upon appeal on the ground that the trial court erred by failing to instruct the jury as requested, a party must show that the instruction was correct, pertinent, and timely presented. *Cincinnati v. Epperson* (1969), 20 Ohio St.2d 59, 61, 49 O.O.2d 342, 343, 253 N.E.2d 785, 787; *State v. Boulabeiz* (1994), 92 Ohio App.3d 238, 241, 634 N.E.2d 700, 702–703.

▉ Appellants' fifth submitted jury instruction proposed that the jury was bound to acquit appellants if they were unable to determine community standards.[3] Appellants present no authority for this proposition.

▉ Although "[t]he government bears the burden of proving all three elements of obscenity to the satisfaction of the trier of fact," it is not required to introduce evidence of community standards. *United States v. Various Articles of Obscene Merchandise* (C.A.2, 1983), 709 F.2d 132, 135; *United States v. 2,200 Paper Back Books* (C.A.9, 1977), 565 F.2d 566, 570. Should the government fail to introduce evidence of community standards including opinion proof, the trier of fact may choose to find that the government has failed to sustain its burden of proof or "arrive at a measure of community tolerance of pornographic material" based upon its "own experience in the community and decide as best [it] can what

---

3. Appellants' fifth submitted jury instruction reads in full as follows:
    "If, from the evidence offered by the State during this trial, you cannot determine the community standards in regard to explicit sexual material, you must find the defendants not guilty."

most people seem to think about such materials." *Various Articles,* 709 F.2d at 135.

While a jury may become deadlocked, and is also free to acquit when it is unable to determine community standards, we find no authority mandating a jury to acquit under this circumstance. See *id.* at 135–136. Hence, appellants' fifth submitted jury instruction was an incorrect statement of the law, and the trial court did not err in failing to adopt this instruction.

■■■ Appellants' fourteenth submitted jury instruction proposed that before the jury could render a verdict of guilty, it was required to find that defendants knew the materials were *obscene.*[4] Again, we find appellants' instruction is an incorrect statement of the law.

Some degree of scienter is required to sustain an obscenity conviction such as pandering obscenity. *Smith v. California, supra,* 361 U.S. at 155, 80 S.Ct. at 219–220, 4 L.Ed.2d at 212. See *Burgun,* 56 Ohio St.2d at 363, 10 O.O.3d at 490–491, 384 N.E.2d at 261–262. R.C. 2907.32 requires that the prosecution show that appellants had "knowledge of the character of the material or performance involved." R.C. 2907.32(A). Arguing that R.C. 2907.32 requires knowledge that the materials were obscene, appellants cite two Supreme Court cases in which the high court refers to "[k]nowledge of the 'character' or 'nature' of *obscene* material" (emphasis added), *Burgun,* 56 Ohio St.2d at 364, 10 O.O.3d at 491, 384 N.E.2d at 262, and "knowledge that the materials in question are *obscene.*" (Emphasis added.) *State ex rel. Pizza v. Strope* (1990), 54 Ohio St.3d 41, 47, 560 N.E.2d 765, 770, fn. 5. Appellants' reliance is misplaced.

In *Hamling v. United States* (1974), 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590, the United States Supreme Court approved a trial court's instruction in an obscenity prosecution that "the defendant's belief as to the obscenity or non-obscenity of the material is irrelevant." *Id.* at 120, 94 S.Ct. at 2909, 41 L.Ed.2d at 622. The court stated clearly that "[t]o require proof of a defendant's knowledge of the legal status of the materials," that is, that the material is obscene under the *Miller* test, "would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law." *Id.* at 123, 94 S.Ct. at 2910–2911, 41 L.Ed.2d at 624. Further, the *Burgun* court stated that "by

---

4. Appellants' fourteenth submitted jury instruction reads in full as follows:

"One of the essential elements the prosecution must prove beyond a reasonable doubt is the element of scienter or knowledge; that is, at the time of the alleged offense, the defendants must have had knowledge of the character of the charged * * * videotape[s]. This means that the State must prove that the defendants knew that the materials at issue were obscene. Thus if you find that the State has failed to prove, beyond a reasonable doubt, that the defendants or any one of them, knew that the materials were obscene, then you must find the defendants or any one of them not guilty."

requiring that knowledge of the 'content' of obscene material is necessary, this court did not imply that there be either knowledge of the actual content or the fact that it was *legally* obscene." *Burgun* at 363, 10 O.O.3d at 491, 384 N.E.2d at 262, citing *Rosen v. United States* (1896), 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606.[5]

Therefore, we find that the scienter requirement does not require that the prosecution prove that the defendant knew that the material was obscene under the *Miller* test, but is satisfied when the defendant was in some manner aware of the sexually oriented content or character of the material. See *Ginsberg v. New York* (1968), 390 U.S. 629, 644, 88 S.Ct. 1274, 1283, 20 L.Ed.2d 195, 206–207. As appellants' fourteenth submitted jury instruction was an incorrect statement of the law, we find that the trial court did not err in failing to so instruct the jury. Accordingly, appellants' second assignment of error is hereby overruled.

■ In their third assignment of error, appellants argue that the trial court erred by refusing to excuse two jurors for cause. During voir dire, prospective juror Elizabeth Smith indicated that her views on sexually explicit materials were very strong. Smith indicated that she would try to be a fair juror, set aside her personal feelings about the case and accept the law as the trial court explained. In response to questions whether she might have difficulty being fair and impartial because of her moral and religious convictions, Smith answered that she would. She was asked whether, in spite of her views, she would do her best to apply the law that the trial court described. She answered, "Oh, yes."

Robyn Runnels initially indicated that she could not be fair because of her moral views, that she "strong[ly] objected to those types of materials." In response to the trial court's questions, however, Runnels stated that she thought she could be fair. Runnels also stated that she would follow the law as given her by the trial court.

■ Crim.R. 24(B)(9) provides that a prospective juror shall not be disqualified due to that person's "previously formed or expressed opinion with reference to the guilt or innocence of the accused" if the trial court is satisfied that the person "will render an impartial verdict according to the law and the evidence

---

5. We also note that appellants' reference to *Strope* cites a footnote following the final sentence of the majority opinion in which the Supreme Court discusses matters relating to the remand of the case. The cited phrase constitutes dicta and not syllabus law. As such, it is not controlling in the present case.

Although the phrase "obscene material" is found in the syllabus of *Burgun,* the context of the *Burgun* decision indicates that the Supreme Court intended "allegedly" obscene material and not material "legally defined as" obscene. Further, as noted in the text, the *Burgun* court goes on to indicate clearly that knowledge that the material is legally obscene is not required under R.C. 2907.32. *Burgun,* 56 Ohio St.2d at 363, 10 O.O.3d at 490–491, 384 N.E.2d at 261–262.

submitted to the jury at trial." The test for prospective jurors is not whether they have views on the subject matter involved; the test is whether their views will impair their judgment to the extent that they would not be able to faithfully and impartially determine facts and apply law according to instruction of the trial court. *Dayton v. Gigandet* (1992), 83 Ohio App.3d 886, 891–892, 615 N.E.2d 1131, 1134–1135.

An appellate court must not disturb a trial court ruling on a challenge for cause "unless it is manifestly arbitrary and unsupported by substantial testimony, so as to constitute an abuse of discretion." *State v. Tyler* (1990), 50 Ohio St.3d 24, 31, 553 N.E.2d 576, 587. An appellate court must pay deference to the trial judge who sees and hears the juror. *State v. DePew* (1988), 38 Ohio St.3d 275, 280, 528 N.E.2d 542, 549–550.

While the record reflects that Smith and Runnels had strong views regarding obscenity, they should not have been disqualified by this mere fact, and we are not persuaded that they could not have been fair and impartial. Both women stated that they were open and willing to apply the law as given to them by the trial court and accepted that appellants were innocent until proven guilty.

The trial court's decision not to exclude Smith and Runnels was not arbitrary, but was supported by substantial testimony. We find that appellants have failed to overcome the presumption that the trial court correctly ruled on appellants' request or demonstrate that the trial court abused its discretion. Appellants' third assignment of error is hereby overruled.

In their fourth assignment of error, appellants argue that the trial court abused its discretion in sentencing Keaton to pay a $1,000 fine and serve six months' imprisonment. R.C. 2929.22 provides that when imposing sentence for a misdemeanor, the trial court shall consider the risk that the offender will commit another offense, the need for protecting the public from the risk, the nature of the offense and the ability and resources of the offender. R.C. 2929.22(A). The section also states that the trial court must not impose both imprisonment and a fine "unless a fine is specially adapted to deterrence of the offense or the correction of the offender." R.C. 2929.22(E).

The trial court has discretion in imposing sentence, and in the absence of an abuse of discretion, an appellate court must not disturb a sentence. *State v. Wagner* (1992), 80 Ohio App.3d 88, 95, 608 N.E.2d 852, 857. The statutory criteria of R.C. 2929.22 do not control the trial court's discretion; rather, the criteria provide a guide in exercising sentencing discretion. *Id.*

"Failure to consider these criteria constitutes an abuse of discretion, but when the sentence imposed is within the statutory limit, a reviewing court will presume

that the trial judge followed the standards set forth in R.C. 2929.22 * * * absent a showing to the contrary." *Id.* at 95–96, 608 N.E.2d at 857.

Thus, the burden is on appellant to come forward with evidence to rebut the presumption that the trial court considered the sentencing criteria. See *State v. Cyrus* (1992), 63 Ohio St.3d 164, 166, 586 N.E.2d 94, 95–96.

Appellants have failed to demonstrate that the trial court's decision in establishing the provisions of the sentence in the present case was unreasonable, arbitrary or unconscionable. The sentence imposed is within the statutory limit, and nothing in the record demonstrates that the trial court did not consider all of the provisions of R.C. 2929.22 when sentencing Keaton. We find that the trial court did not abuse its discretion, and therefore overrule appellants' fourth assignment of error.

*Judgment affirmed.*

WALSH, P.J., and WILLIAM W. YOUNG, J., concur.