This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-appellant, Mark Overholt, appeals his conviction and sentence by the Medina Municipal Court for obstruction of official business. We affirm.
On February 17, 1998, Officer Christopher Ryba of the Montville Township Police Department observed as a pickup truck turned westbound onto Wedgewood Road in Medina County. Officer Ryba, who was driving eastbound on Wedgewood Road, visually identified the driver as Defendant's son, Jon Overholt ("Overholt"). Because he was aware that Overholt's license had been placed under suspension, Officer Ryba turned around and pursued the truck in order to initiate a traffic stop. During this period, Overholt used his cellular phone to call Defendant. Overholt pulled the pickup truck into a residential driveway, turned off the headlights, and shut off the engine. Officer Ryba pulled into the driveway behind the truck, exited his cruiser, and approached Overholt to investigate. After taking some routine information from Overholt and his passenger, Officer Ryba returned to his cruiser to check the status of Overholt's license suspension through the dispatcher's computer.
At that time, a car pulled up behind Officer Ryba's cruiser and parked on an adjacent street. Defendant exited the car, walked past the cruiser, and got into the passenger seat of the truck driven by Overholt. Officer Ryba notified the dispatcher that he needed backup, and a second officer arrived shortly thereafter.
After determining that Overholt's license was under suspension, Officer Ryba approached the pickup truck again. Defendant initiated a verbal altercation with Officer Ryba when the officer informed Overholt that his license was invalid. Officer Robert Duncan placed Overholt in handcuffs and led him to a police cruiser, then returned to assist Officer Ryba in subduing Defendant.
Defendant was arrested on the scene and charged with obstructing official business, a violation of R.C. 2921.31. On June 11, 1998, Defendant moved for leave to file an untimely motion to suppress all evidence acquired as a result of his arrest. The trial court denied leave to file the motion. Defendant was convicted following a jury trial. The trial court sentenced him to five days in jail and ordered him to pay a fine of $750.00. He timely appealed and has raised six assignments of error, which are rearranged for ease of discussion.
 ASSIGNMENT OF ERROR IV Defendant was denied due process of law when the court refused to grant a motion for judgment of acquittal.
In his fourth assignment of error, Defendant has argued that there was insufficient evidence to support a conviction under R.C.2921.31(A) because his conduct did not constitute an act under that section. We disagree.
If the evidence is such that reasonable minds could differ as to whether the State has proven each element of the offense beyond a reasonable doubt, the trial court may not grant a motion for acquittal. State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. The function of an appellate court on review is to assess the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In making this determination, a reviewing court must view the evidence in the light most favorable to the prosecution. Id.;State v. Feliciano (1996), 115 Ohio App.3d 646, 652.
A conviction under R.C. 2921.31(A) requires proof of an affirmative act that hampered or impeded the performance of the lawful duties of a public official. North Ridgeville v. Reichbaum
(1996), 112 Ohio App.3d 79, 84. Rather than viewing the acts of a defendant in isolation, the total course of the defendant's conduct must be considered. See, e.g., id. at 84-85 (concluding that evidence of the defendant's "multiple affirmative acts" was sufficient to establish a violation of R.C. 2921.31(A)).
In Dayton v. Rogers (1979), 60 Ohio St.2d 162, syllabus, the Supreme Court of Ohio held that "[t]he making of an unsworn false oral statement to a police officer is not punishable conduct within the meaning of * * * [R.C. 2921.31(A)]." The Court concluded that while the term "acts" may under some circumstances include oral statements, the intention of the legislature in enacting R.C.2921.31(A) was not to encompass oral statements. Dayton v.Rogers, 60 Ohio St.2d at 164. Relying on the rationale expressed in Rogers, some courts concluded that an oral statement cannot be an act within the meaning of R.C. 2921.31(A). See State v. Smith
(1996), 108 Ohio App.3d 663, 668-69 (concluding that "an unsworn true statement * * * spoken boisterously" is not an act that can be proscribed by the statute); Cleveland v. Corrai (1990), 70 Ohio App.3d 679,682. In State v. Lazzaro (1996), 76 Ohio St.3d 261,264-65, the Supreme Court of Ohio revisited its interpretation of R.C. 2921.31(A) and concluded that an unsworn false oral statement made to a police officer is an act that may constitute obstruction of official business. Accordingly, the Court overruled its prior decision in Dayton v. Rogers. State v. Lazzaro,76 Ohio St.3d at 266.
This court has concluded:
 [W]hen the words * * * of a defendant are coupled with actions of a defendant that include approaching police officers who are attempting to apprehend two violent suspects, brandishing a canister of pepper spray, and purposely distracting them from their efforts to control a volatile situation, that person may properly be found to have delayed, prevented, or obstructed the performance of an official function. Interference with a lawful arrest may constitute obstruction of official business.
State v. Bryant (Aug. 28, 1996), Summit App. No. 17547, unreported, at 7, citing State v. Anderson (1976), 46 Ohio St.2d 219,221-22. In Bryant, the defendant, who was a neighbor of the subject of a confrontational arrest, stood nearby on a porch shouting that the police did not have the authority to arrest the subject. The insults were mingled with racial epithets. The officers repeatedly were forced to turn their attention away from the arrest to the defendant. The defendant was carrying a container of pepper spray, but denied that it was discharged at the scene. Assuming, arguendo, that the defendant had not discharged the pepper spray, this court concluded that his actions of repeatedly yelling insults at the officers, purposefully distracting them from an arrest, and brandishing the pepper spray were sufficient to constitute an act subject to R.C. 2921.31(A).Bryant, supra, at 6. By this holding, we rejected the defendant's contention that "a physical attempt to prevent the performance of a duty is required." Id. at 7.
In this case, Defendant arrived at the scene of the traffic stop, exited his vehicle, and entered the vehicle driven by his son. Officer Duncan testified that Defendant "started hollering at [Officer Ryba] that he wasn't going to leave there. [That] [t]his was all a bunch of bullshit and that he wasn't leaving." Officer Ryba recalled that he asked Defendant on several occasions to leave the scene; that Defendant refused; and that he retorted that if he was not ticketed, Officer Ryba would "have to call more cops out here." Defendant's actions led Officer Ryba to characterize the situation as high-risk and to fear for his own safety and the safety of other officers on the scene. Officer Duncan testified that Officer Ryba spent roughly ten to twenty minutes dealing with Defendant at the scene. He stated that Officer Ryba continued to deal with Defendant's behavior while attempting to ascertain whether Overholt had driving privileges. Throughout this time, Officer Ryba warned Defendant that he could be arrested if he did not desist.
Officer Duncan recalled that Defendant was "very, very loud" during this confrontation. Officer Ryba requested that Defendant leave the scene; he refused, but continued to gesture and to yell, "I'm not leaving. I don't care how many tickets you write me, I'm not going anywhere." Defendant responded to Officer Ryba's requests to leave by saying, "I don't give a shit. Arrest me. This is all bullshit." Officer Duncan recalled that he elevated the volume of his own voice in response to Defendant's shouting, and that he used profanity on one occasion shortly after Defendant's arrest. Officer Ryba stated that "[Defendant] proceeded to call us a bunch of assholes, incompetent fucks. We didn't know what we were doing. We were arresting his son for no reason. * * * And at the same time he was shouting extremely loudly and throwing his arms about."
Defendant's refusal to leave the scene when requested and his interference with the officers' attempts to complete an arrest, coupled with his repeated, prolonged, and profane outbursts, are sufficient to constitute acts within the meaning of R.C.2921.31(A) that could convince a reasonable trier of fact beyond a reasonable doubt that he purposefully hampered or impeded the officers' performance of their duties.[1] Accordingly, the trial court did not err in overruling Defendant's motion for acquittal. His fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR III Defendant was denied due process of law when the court refused to give an instruction concerning free speech.
Defendant has averred that the trial court incorrectly refused to instruct the jury that he could not be convicted as a result of the exercise of his right to free speech. Specifically, Defendant moved for the following instruction:
 The First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution protects free speech. The state cannot prosecute or convict one for exercising his right to free speech no matter how distasteful or inappropriate it may be. [You are] instructed that the law applicable to this case is that speaking is protected free speech and is protected by the First Amendment to the United States Constitution and Section 11 of the Ohio Constitution and you cannot convict the defendant for such activity.
(Citation omitted.)
In arguing that he was entitled to this instruction, Defendant has relied on the decision of the Supreme Court of Ohio in State v. Lessin (1993), 67 Ohio St.3d 487. In that case, the Court concluded that when the actions that give rise to a criminal offense are comprised of a both constitutionally-protected activity and activity that is not constitutionally protected, the trial court must instruct the jury that evidence of the constitutionally-protected act may not be considered as evidence of the defendant's guilt. State v. Lessin (1993), 67 Ohio St.3d 487, syllabus. Defendant's reliance on Lessin is misplaced.
In Lessin, the defendant was arrested following a public demonstration in which she burned a United States flag. The state alleged that she also made statements to the crowd calculated to incite violence and rushed through the angry crowd of onlookers, pushing and shoving those in her path. She was convicted of inciting to violence, a violation of R.C. 2917.01(A)(1), which prohibited any person from knowingly engaging in activity "designed to urge or incite another to commit any offense of violence, when * * * [s]uch conduct takes place under circumstances that create a clear and present danger" that a violent offense will be committed. The Supreme Court of Ohio concluded that the defendant was engaged in several different forms of conduct, including expressive conduct protected by the First Amendment. State v. Lessin,67 Ohio St.3d at 491. Specifically, the defendant's conduct implicated her "right to verbally criticize her government's foreign policy and her right to burn the United States flag[.]" Id. at 492. The court also recognized that the alleged assault of onlookers, regardless of the fact that it occurred at a demonstration and while the defendant was engaged in protected speech, was not constitutionally protected. Id.
Fighting words, which "by their very utterance inflict injury or tend to incite an immediate breach of the peace," are one of the narrowly defined classes of speech that are not entitled to the protection of the First Amendment. Chaplinsky v. NewHampshire (1942), 315 U.S. 568, 571-72, 86 L.Ed. 1031, 1035. Accordingly, "[r]esort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution," and the prosecution of fighting words as a criminal act is constitutionally permissible. Id. at 572,86 L.Ed. at 1035, quoting Cantwell v. Connecticut (1939),310 U.S. 296, 309-10, 84 L.Ed. 1213, 1221.
The First District Court of Appeals, in considering a confrontation between a citizen and the police, has noted:
 [N]ot * * * every act that can conceivably be said to hinder a police officer rises to the level of criminal conduct. Certainly there is a level of hindrance which is simply too casual, remote, or indirect to be punishable * * *. Although entitled to full respect of the badge and uniform in the execution of his or her duty, a police officer is expected to tolerate a certain level of uncooperativeness, especially in a free society in which the citizenry is not obliged to be either blindly or silently obeisant to law enforcement. Interference with the police by citizens must, therefore, be necessarily viewed as a continuum along which, at a certain point, the line is crossed. The crossing point must involve some form of conduct beyond mere argument. * * * [P]rovided that the language does not constitute fighting words, a citizen's verbal assault on a police officer does not, standing alone, constitute criminal conduct.
(Emphasis added.) State v. Stayton (1998), 126 Ohio App.3d 158,164. Further, a distinction can be made between the mere use of profanity in the presence of a police officer and the use of such language in a manner directed toward an officer. State v. Wood
(1996), 112 Ohio App.3d 621, 627. "[C]onstitutionally unprotected `fighting words' have been found where the defendant repeatedly directs to the police profane epithets which would provoke the average person to a breach of the peace." Cleveland v. Smith
(Oct. 28, 1993), Cuyahoga App. No. 62560, unreported, 1993 Ohio App. LEXIS 5183 at *9.
In this case, Defendant engaged in a prolonged diatribe liberally seasoned with profane references to the officers' character and conduct. The profane nature of his references directed toward the officers, coupled with the duration and volume of his outburst, would lead a reasonable person to conclude that, by their very utterance, these statements would inflict injury or tend to incite an immediate breach of the peace. These statements, properly characterized as fighting words, were not entitled to constitutional protection. See State v. Wood,112 Ohio App. 3d at 628-29; State v. White (Apr. 21, 1998), Crawford App. Nos. 3-97-18 and 3-97-19, unreported, 1998 Ohio App. LEXIS 1934 at l*10; State v. Moreno (June 23, 1982), Stark App. No. CA-5840, unreported, 1982 Ohio App. LEXIS 13994 at *8. See, also,Cincinnati v. Karlan (1974), 39 Ohio St.2d 107, paragraph three of the syllabus. As such, the conduct underlying Defendant's conviction did not contain elements of constitutionally protected expression, and he was not entitled to the requested jury instruction. See State v. Stevens (Dec. 30, 1994), Summit App. No. 16582, unreported, at 19-21, appeal dismissed, 80 Ohio St.3d 1425,1425. See, also, State v. Lessin, 67 Ohio St.3d at syllabus. Defendant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR I The court erred and abused its discretion in denying leave to file a motion to suppress.
In his first assignment of error, Defendant has argued that the trial court abused its discretion by denying his request to file an untimely motion to suppress evidence acquired as a result of his arrest.
A motion to suppress must be filed with the trial court within the earlier of thirty-five days following arraignment or seven days before trial, although the court may extend the period for filing if necessary in the interest of justice. Crim.R. 12(B) and (C). Defendant entered a written plea of not guilty on February 26, 1996. A jury trial was scheduled for May 12, 1998, but was continued to June 23, 1998. Defendant's motion for leave to file a motion to suppress was filed on June 9, 1999.
A trial court's decision denying leave to file an untimely motion to suppress will not be disturbed on appeal absent an abuse of the trial court's discretion. State v. Karns (1992), 80 Ohio App.3d 199,204. An abuse of discretion connotes action by the trial court that is unreasonable, arbitrary, or unconscionable. See State v. Brown (1988), 38 Ohio St.3d 305, 312, certiorari denied, 489 U.S. 1040, 1040, 103 L.Ed.2d 239, 239. In this case, Defendant has argued that his counsel's withdrawal on the scheduled trial date of May 12, 1998, should demonstrate cause for untimely filing of the motion to suppress. The record indicates, however, that Defendant discharged his counsel and retained new counsel at that time. He was represented by counsel from the inception of the charges against him. There is no indication that Defendant was unaware of the circumstances surrounding the charges. Indeed, "Defendant was in full possession of the surrounding facts and circumstances pertaining to his case within the time requirements of Crim.R. 12(C)." State v. Young (Dec. 16, 1998), Medina App. No. 2818-M, unreported, at 4-5.
The record in this case does not support the contention that the trial court abused its discretion in denying Defendant leave to file an untimely motion to suppress. Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II Defendant was denied a fair trial when the court allowed hearsay evidence concerning the police investigation as to the propriety of the stop of Jon Overholt.
In his second assignment of error, Defendant has argued that the trial court erred by allowing the admission of several instances of hearsay evidence related to the events leading up to Defendant's arrest. Specifically, he has argued that the court improperly overruled an objection to the prosecutor's opening statement based on an assertion that the evidence would show that Office Ryba knew that Overholt had a felony drug conviction and on details of conversations between Officer Ryba and third persons. He has also argued that the court incorrectly admitted (1) testimony by officers Duncan and Ryba as to conversations held at the time of Overholt's arrest, and (2) a journal entry of conviction with respect to Overholt that was used to cross examine Defendant.
The purpose of opening statements is to inform the jury of the nature of the case and to outline the facts that each party will attempt to prove. Maggio v. Cleveland (1949), 151 Ohio St. 136, paragraph one of the syllabus. The opening statements of counsel are not evidence. State v. Frazier (1995), 73 Ohio St.3d 323,338. Furthermore, attorneys are afforded latitude in the presentation of opening arguments. Maggio v. Cleveland, 151 Ohio St. at paragraph two of the syllabus. Error results from comments on the evidence made during opening argument only to the extent that such evidence was subsequently determined to be inadmissible. See State v. Back (July 18, 1990), Medina App. No. 1827, unreported, at 6. See, also, State v. Davis (1991), 62 Ohio St.3d 326,337.
An out-of-court statement, offered for its truth, is inadmissible hearsay unless it falls into one of the exceptions recited in Evid.R. 803. Evid.R. 802 and 803. An out-of-court statement not offered for the truth of the matter asserted is not classified as hearsay. State v. Price (1992), 80 Ohio App.3d 108,110. Defendant was charged with obstructing official business in violation of R.C. 2921.31(A), which provides:
 No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties.
Testimony with respect to out-of-court conversations between the officers and Overholt at the time of the incident were offered not to prove the content of the conversations themselves, but to establish, as required by R.C. 2921.31(A), that Officer Ryba was acting in performance of his duties as a police officer. These statements are not hearsay and were properly admissible. Accordingly, the state's comment on this evidence during opening was not impermissible. See State v. Davis, 62 Ohio St.3d at 337.
Defendant also argues that the trial court erred by admitting a journal entry evidencing a judgment against Overholt and granting him limited driving privileges. Evid.R. 803(21) permits the admission of a final judgment:
 adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the Government in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused.
Use of the document was limited to two exchanges. In the first, the State examined Officer Ryba with respect to the stop of Overholt:
Q: I think you said, "Jon, why are you driving?"
A: Correct.
Q: Then what happened?
 A: He said, "I have driving privileges," and then handed me a piece of paper.
 Q: I will hand you State's Exhibit No. 1 * * *. Do you recognize what that is?
* * *
 A: This is a copy of a document from common pleas court giving the defendant limited driving privileges on a drug suspension.
 Q: How does it compare to the document that Mr.n Overholt gave you?
A: It is identical.
Q: Same thing?
A: Right.
In the second exchange, the State used Exhibit 1 to clarify whether Defendant was familiar with the scope of his son's driving privilege. Contrary to Defendant's assertion, the journal entry was not used to cross-examine him as to the existence of his son's drug conviction.
"Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Nonconstitutional error is rendered harmless where there is substantial other evidence to support a guilty verdict. State v.Webb (1994), 70 Ohio St.3d 325, 335. Given the evidence as discussed supra and assuming, without deciding, that the trial court erred by admitting the journal entry granting Overholt driving privileges, such error must be disregarded on appeal as harmless. Defendant's fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V Defendant was denied due process of law when the court relied on improper considerations and matters in sentencing Defendant.
Defendant has argued that his five-day prison term and $750.00 fine were imposed contrary to law. We disagree.
A defendant convicted of a misdemeanor of the second degree may be fined up to $750.00, imprisoned for a prison term not to exceed ninety days, or both. R.C. 2929.21(A) through (C). Misdemeanor sentencing is committed to the discretion of the trial court, but the exercise of such discretion must be guided by consideration of the nature and circumstances of the offense; the offender's risk of recidivism; the need to protect the public from future crimes by the offender; the "history, character, and condition" of the offender; the offender's need for rehabilitation; a victim impact statement, where applicable; and the ability of the offender to pay a court-imposed fine. R.C.2929.22(A) and (B). The fact that a defendant is not a repeat or dangerous offender mitigates against imposition of a prison term, but does not control the discretion of the trial court. R.C.2929.22(B)(1). Similarly, the trial court's discretion is guided, but not controlled, by the seriousness and recidivism factors enumerated in R.C. 2929.12(C) and (E). R.C. 2929.22(C). The trial court may properly consider any additional relevant factors. See R.C. 2929.22(D).
A misdemeanor sentence that falls within the guidelines established by R.C. 2929.22 will be disturbed on appeal only in the case of an abuse of the trial court's discretion. State v.Keaton (1996), 113 Ohio App.3d 696, 707-08, appeal dismissed,77 Ohio St.3d 1517, 1517. An abuse of discretion connotes action by the trial court that is unreasonable, arbitrary, or unconscionable. See State v. Brown, 38 Ohio St.3d at 312. Although R.C. 2929.14(B) requires a trial court to state findings for the record in the course of felony sentencing, R.C. 2929.22
does not impose a similar requirement for misdemeanor sentencing. See State v. Sheppard (May 19, 1999), Ashland App. No. 98-COA-01278, unreported, 1999 Ohio App. LEXIS 2364 at *2-3. When the sentence imposed is within the statutory limits, the trial court is presumed to have considered the required factors absent a demonstration to the contrary by the defendant. State v. Keaton,113 Ohio App.3d at 707-08.
R.C. 2929.21(B)(2) permits a term of imprisonment of up to ninety days for a misdemeanor of the second degree. Defendant was sentenced to a prison term of five days. At sentencing, the trial court reiterated the circumstances surrounding Overholt's arrest in order to emphasize that Defendant was aware of the potential volatility of the situation. The court commented:
 Under the circumstances, * * * you inserted yourself into a situation that exacerbated what was going on and made that situation significantly more volatile than it needed to be under the circumstances. And you appear to have done that with a specific purpose in mind.
The prison term of five days is well within the statutory guidelines. Further, Defendant has failed to demonstrate that the trial court did not consider the factors provided by R.C. 2929.22
and 2929.12, and his contention that the court improperly considered irrelevant factors related to his son's arrest is without merit. Accordingly, we find no abuse of the trial court's discretion in imposing a term of imprisonment in this case. Defendant's fifth assignment of error is overruled.
Defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Medina, Medina Municipal Court, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ LYNN C. SLABY
FOR THE COURT
BAIRD, P. J., CARR, J., CONCUR
[1] The state argued at trial that the obstruction of official business charge was supported by (1) Defendant's repeated refusal to leave the scene and his diversion of the officers' attention away from the arrest in progress, and (2) the accompanying outburst directed toward the officers. Because Defendant actively interfered in the officers' attempt to complete the arrest, we need not address whether his words, standing in isolation, would be sufficient "action" as contemplated by R.C. 2921.31(A).