OPINION
Defendant-appellant, William Reynolds, appeals his conviction and sentence in the Brown County Court for assault. We affirm the trial court's decision.
 On the morning of February 26, 2000, appellant and his wife, Phyllis Reynolds, were in their truck traveling on State Route 221 near their home in Brown County, Ohio. Phyllis Reynolds was driving the truck, and appellant was in the passenger's seat taking pictures of trash on people's property. Around 9:00 a.m., they stopped at 7099 State Route 221 across the road from Pamela Daugherty's residence. Shortly thereafter, an altercation occurred between Daugherty and appellant.
 After Daugherty filed a complaint with the sheriff's office, appellant was charged with assault. Appellant entered a plea of not guilty, and the matter proceeded to a bench trial on August 17, 2000.
At trial, Daugherty testified that she came out on her front porch in her pajamas and saw a truck stopped in front of the property line dividing her grandmother's property and neighboring property owned by Bobby and Cynthia Hicks. After seeing that appellant was taking pictures of her grandmother's property, Daugherty crossed the road and came around the front of the truck to the passenger's side. She waived her arms in the air to interfere with the pictures and told appellant that "Grandma don't [sic] want you taking the pictures of her property."
According to Daugherty, appellant stated "[o]ut of the way, girl" and shoved her with his right hand. Appellant caught her pajama top and ripped it, exposing her right breast. As she reached up to cover herself, her left hand became entangled in the camera strap. At that time, appellant stated, "I'm being assaulted. Punch it, Mommy, punch it." As the truck began to move, Cynthia Hicks, who was behind Daugherty, told her to "[w]atch out!" Daugherty fell, and her hand was trapped against the truck until the camera strap broke. As a result of the altercation, Daugherty sustained bruises on her left hand and her left arm.
Hicks testified that she heard someone outside her home hollering, "Granny doesn't want you taking pictures of her property." At that time, she went outside and saw appellant reach out and grab Daugherty with his right hand and rip Daugherty's pajama top. After seeing Daugherty's hand entangled in the camera strap, Hicks asked appellant, "Old man, what are you doing?" to which appellant replied, "I'm being assaulted. Punch it Mommy, punch it." As the truck started to move, Hicks stated that she and her husband, who had also arrived at the scene, pulled Daugherty to prevent her from going underneath the truck until the camera strap broke.
Appellant and his wife presented a different version of the facts. According to appellant, he saw Daugherty run in front of the truck and reach in the truck for the camera. At that time, he was holding the camera in his right hand with the strap wrapped around his right arm. Daugherty clawed the back of his right hand and tugged at the camera strap until it broke. He denied seeing Daugherty with her hands in the air, shoving her, and ripping her pajama top. He further denied hearing any statements made by Daugherty or Hicks, and denied telling his wife to "punch it." Appellant further testified that he has a bad back that prevents him from being able to twist and turn while seated and that he bruises very easily since he has suffered several strokes. As a result of Daugherty's actions, appellant stated that he sustained bruises on the back of his right hand and on his arm.
Phyllis Reynolds testified that Daugherty stated, "[g]ive me that God damn camera" as she reached inside the truck for the camera and tugged on the strap, causing it to break. According to Phyllis Reynolds, appellant had the camera in his right hand and he did not say or do anything. She further testified that someone stood in front of the truck, preventing her from driving off until the altercation was over.
At the conclusion of the trial, the trial court found appellant guilty of assault and ordered a presentence investigative report. The trial court sentenced appellant to one hundred eighty days in the Brown County Adult Detention Center, with one hundred fifty days suspended, and placed him on reporting probation for three years. As part of the terms and conditions of probation, the trial court ordered appellant to complete a long-term anger management program and not to have any contact with the victim or her immediate family. Appellant appeals his conviction and sentence, raising four assignments of error. We will address the first and third assignments of error together.
Assignment of Error No. 1:
 The evidence in this case is insufficient to sustain a conviction.
Assignment of Error No. 3:
 The Trial Court erred in not sustaining the defense of self defense in this case.
In the first and third assignments of error, appellant contends that the evidence at trial was insufficient to support his conviction for assault and that the evidence established self-defense. Appellant argues that the inconsistencies in the evidence and his claim of self-defense negated the evidence of assault.
When reviewing the sufficiency of the evidence, an appellate court's function is to determine whether the evidence admitted at trial, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
The crime of assault is defined as follows: "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." R.C. 2903.13(A). "Physical harm to persons" is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).
The state presented evidence from the victim and an eyewitness that appellant knowingly shoved Daugherty, ripped her pajama top, and told his wife to accelerate the truck while Daugherty was entangled in the camera strap. As a result, Daugherty sustained bruises on her left hand and arm. This evidence, if believed, was sufficient to sustain a conviction for assault despite the inconsistencies in the testimony.
Self-defense is an affirmative defense which the defendant has the burden to prove by a preponderance of the evidence. State v. Martin
(1986), 21 Ohio St.3d 91, 93. In Martin, the Supreme Court of Ohio discussed self-defense and stated:
 Self-defense represents more than a "denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged * * *." Id. at 94. Rather, * * *, this defense admits the facts claimed by the prosecution and then relies on independent facts or circumstances which the defendant claims exempt him from liability. * * * Self-defense seeks to relieve the defendant from culpability rather than to negate an element of the offense charged.
Id. at 94. Further, "[s]elf-defense presumes intentional, willful use of force to repel force or escape force." State v. Champion (1924),109 Ohio St. 281, 287.
Under Martin, appellant would have to admit to the facts in question and justify his defensive actions under the circumstances. However, appellant and his wife vehemently denied that appellant did or said anything. Therefore, appellant failed to offer evidence that he intentionally used force to repel or escape force to support a claim of self-defense.
After viewing the evidence in a light most favorable to the state, we find that a rational trier of fact could have found beyond a reasonable doubt the elements of assault. We further find that appellant's claim of self-defense lacks merit. Accordingly, appellant's first and third assignments of error are overruled.
Assignment of Error No. 2:
 The judgment of the Trial Court is against the manifest weight of the evidence.
In his second assignment of error, appellant contends that his conviction weighs heavily against the evidence when considering the discrepancies in the evidence, Daughterty's conflicting statements as to which hand shoved her, and his claim of self-defense.
Appellant sets forth his argument in terms of the analysis set forth inState v. Mattison (1985), 23 Ohio App.3d 10. In Mattison, the court set forth guidelines to help determine whether a trial court's decision is against the manifest weight of the evidence. The court noted that these guidelines are not hard and fast rules which must be followed. Id. at 14.
This court, however, follows the Supreme Court of Ohio's standard for reviewing the manifest weight of the evidence set forth in State v.Thompkins (1997), 78 Ohio St.3d 380. The standard has been summarized as follows:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In the instant case, although there is conflicting evidence in the record, we are not convinced that the trial court "clearly lost its way" in adopting the state's version of the events. A reasonable person could believe Daugherty's version of the events. An eyewitness, Hicks, corroborated Daugherty's testimony, which was legally sufficient to support a conviction for assault. The state presented reliable, credible evidence of appellant's guilt, and this court declines to substitute its own judgment concerning the credibility of the witnesses. Having previously found that appellant's claim of self-defense lacks merit, we therefore conclude that the manifest weight of the evidence supports appellant's convictions. Appellant's second assignment of error is overruled.
Assignment of Error No. 4:
 The Trial Court abused its discretion in imposing sentence upon the defendant, in that it failed to follow the sentencing guidelines of RC 2929.22 et al. [sic]
In his final assignment of error, appellant contends that the record is devoid of any evidence that the trial court considered the mandatory provisions of R.C. 2929.22. Specifically, appellant argues that his prior conviction for resisting arrest and the current offense do not support the sentence imposed by the trial court.
In misdemeanor cases, the sentence imposed by the trial court will not be reversed absent an abuse of discretion. State v. Keaton (1996),113 Ohio App.3d 696, 707, appeal dismissed, 77 Ohio St.3d 1517 . A failure by the trial court to consider the criteria of R.C. 2929.22 in sentencing a misdemeanor offender constitutes an abuse of discretion.Id. "The statutory criteria of R.C. 2929.22 do not control the trial court's discretion; rather, the criteria provide a guide in exercising sentencing discretion." Id. When the sentence imposed is within the statutory limits, the trial court is presumed to have considered the required factors absent a demonstration to the contrary by the defendant. Id. at 707-708. Further, "a silent record raises the presumption that the court correctly considered the appropriate sentencing criteria." State v. Adams (1988), 37 Ohio St.3d 295.
The crime of assault is a misdemeanor of the first degree. R.C.2903.13(C). Pursuant to R.C. 2929.21(B)(1), the maximum term of imprisonment for a first-degree misdemeanor is six months (one hundred eighty days) in jail and a $1,000 fine. R.C. 2929.21(B)(1) and (C)(1).
In this case, appellant was sentenced to one hundred eighty days in the Brown County Adult Detention Center with one hundred fifty days suspended. The sentence was within the statutory limits of R.C.2929.21(B)(1). In its sentencing entry, the trial court noted that it had considered the presentence investigative report and statements made by the state and appellant. The pre-sentence report revealed that appellant had a previous conviction for resisting arrest.
At the sentencing hearing, the trial court referred to the presentence report and verified with appellant that he was retired, disabled, and had certain incomes. The trial court allowed the state to make a recommendation for sentencing and then gave appellant an opportunity to present any mitigating factors. The trial court suspended all but one month of the sentence, and its decision to impose one month of imprisonment and no fine relates to appellant's limited income, being disabled, consideration of his past criminal conduct, and the nature of the current offense. As such, there was an evidentiary basis in the record that supports the sentence, and that the trial court considered the sentencing factors of R.C. 2929.22.
Based upon the foregoing, we find that the trial court did not abuse its discretion in sentencing appellant. Accordingly, appellant's fourth assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.